[No. E052943. Fourth Dist., Div. Two. May 17, 2012.]

SALVADOR HERRERA et al., Plaintiffs and Appellants, v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant and
Respondent.

1496

**COUNSEL**

Dennis Moore for Plaintiffs and Appellants.

Malcolm Cisneros, William G. Malcolm, Donald W. Robinson and Brian S. Thomley for Defendant and Respondent.

**OPINION**

**CODRINGTON, J.—**

I

INTRODUCTION

Salvador Herrera and Diana Herrera (plaintiffs) defaulted on their home loan. Federal National Mortgage Association (Fannie Mae) purchased their

property at a nonjudicial foreclosure sale. Plaintiffs filed suit against Fannie Mae to set aside the sale. The trial court sustained Fannie Mae's demurrer to plaintiffs' second amended complaint (SAC) without leave to amend. Plaintiffs appeal the judgment of dismissal.

Plaintiffs contend the trial court abused its discretion in sustaining Fannie Mae's demurrer to the fifth and sixth causes of action of plaintiffs' SAC, without leave to amend. Plaintiffs argue they should be permitted to amend to allege that Mortgage Electronic Registration Systems, Inc. (MERS), a nominee beneficiary, lacked authority to assign the note and deed of trust (DOT), since MERS did not have an agency agreement with IndyMac Federal Bank, F.S.B. (IndyMac Federal), or the Federal Deposit Insurance Corporation (FDIC). Plaintiffs assert that, as a consequence, MERS's assignment of the DOT and note to OneWest Bank FSB, was void. In turn, OneWest's assignment of the DOT to Fannie Mae was void as well, and Fannie Mae could not foreclose on plaintiffs' property. Plaintiffs also contend the trial court erred in sustaining Fannie Mae's demurrer to the first cause of action for violation of Civil Code section 2932.5.[1]

 We conclude there was no abuse of discretion in sustaining Fannie Mae's demurrer without leave to amend. The courts in California have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a DOT. Plaintiffs granted MERS such authority by signing the DOT. The judicially noticed documents attached to plaintiffs' SAC established a chain of title in which MERS assigned its interest to OneWest, and OneWest assigned its interest to Fannie Mae. There were no facts alleged in the SAC or raised during the hearing on the demurrer demonstrating a reasonable possibility that an amendment could cure the complaint's defects. Plaintiffs' proposed new facts raised for the first time on appeal do not require reversal, as there was no abuse of discretion in the trial court denying leave to amend.

We also conclude there was no error in sustaining the demurrer without leave to amend as to the first cause of action for violation of section 2932.5. Although the trial court previously overruled Fannie Mae's demurrer to this cause of action, this court may review and affirm the ruling if it is correct. We conclude the trial court appropriately sustained the demurrer to the first cause of action without leave to amend since section 2932.5 is inapplicable to DOT's. We affirm the judgment.

---

[1] Unless otherwise noted, all statutory references are to the Civil Code.

## II

### FACTS AND PROCEDURAL BACKGROUND

On August 3, 2007, plaintiffs obtained a home loan from Indymac Bank, F.S.B. (Indymac). In furtherance of the loan, plaintiffs signed a promissory note (note) agreeing to repay the loan in the amount of $318,500, plus interest. The note was secured by a DOT signed by plaintiffs. The DOT named Indymac as "Lender," First American Title Insurance Co. (First American) as trustee, and MERS as beneficiary, acting as nominee for the lender, Indymac.

The DOT specified as to the transfer of property rights to plaintiffs' home on Eric Lane in Riverside that "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . ."

The DOT further states that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

On July 11, 2008, the assets of Indymac were transferred to FDIC, as conservator for IndyMac Federal. On March 19, 2009, IndyMac Federal was placed in receivership and IndyMac Federal's assets allegedly were sold to OneWest, "unless such asset was a Loan in which a foreclosure action began."

On June 1, 2009, MERS, as nominee beneficiary for IndyMac Federal, signed an assignment of the DOT securing plaintiffs' home loan. The assignment transferred all interest in the DOT, together with the note, to OneWest. JC San Pedro signed the assignment as "Authorized Signatory" for MERS.

On June 2, 2009, a notice of default and election to sell under the DOT (notice of default) was executed and recorded by Trustee Corps, as agent for IndyMac Federal. Plaintiffs owed $15,200.20 on their mortgage.

On July 8, 2009, OneWest executed a substitution of trustee substituting MTC Financial Inc., doing business as Trustee Corps (Trustee Corps), in place of First American, as trustee of the DOT. JC San Pedro signed the assignment as "Authorized Signatory" for OneWest.

Also on July 8, 2009, OneWest assigned to Fannie Mae all of OneWest's beneficiary interest in the DOT and note. JC San Pedro signed the assignment of the DOT, as "Authorized Signatory" for OneWest.

On September 3, 2009, the substitution of trustee executed on July 8, 2009, was recorded.

Plaintiffs failed to cure the default on their home mortgage. On September 3, 2009, Trustee Corps executed and recorded a notice of trustee's sale, notifying plaintiffs that it intended to sell plaintiffs' property at a nonjudicial foreclosure sale on September 23, 2009.

On September 23, 2009, plaintiffs' home was sold to Fannie Mae in a nonjudicial foreclosure sale, conducted by Trustee Corps. The trustee's deed upon sale and the July 8, 2009, assignment of the DOT from OneWest to Fannie Mae, were recorded on October 5, 2009.

On December 17, 2009, plaintiffs filed a complaint against Fannie Mae, seeking to set aside the foreclosure sale. Fannie Mae demurred to the complaint. The trial court overruled the demurrer to the first cause of action alleging violation of section 2932.5, and sustained the demurrer with leave to amend as to the remaining causes of action. Plaintiffs amended their complaint and Fannie Mae demurred again to the entire amended complaint. The court sustained the demurrer with leave to amend, as to the entire first amended complaint, including the first cause of action for violation of section 2932.5.

Plaintiffs filed a SAC. Attached to the complaint were various supporting documents, including the DOT, promissory note, assignments of the DOT, notice of default and the trustee's sale, substitution of trustee, and trustee's deed upon sale. Fannie Mae once again demurred. The trial court sustained Fannie Mae's demurrer without leave to amend, as to the entire complaint, including the first cause of action for violation of section 2932.5, the fifth cause of action seeking to set aside the trustee's sale, and the sixth cause of action to void or cancel the trustee's deed upon sale. The trial court thereafter entered a judgment of dismissal.

## III

## STANDARD OF REVIEW

When reviewing a ruling on a demurrer, we apply the following standard of review: " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; see *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 107 [80 Cal.Rptr.2d 60].)

Where there is a request for leave to amend but it is "wholly insufficient to suggest whether or how the plaintiff could amend . . . 'the question as to whether or not [the trial] court abused its discretion' in denying leave to amend remains open on appeal. (Code Civ. Proc., § 472c.) But it is the *trial court's* discretion that is at issue; the reviewing court may only determine, as a matter of law, whether the trial court's discretion was abused. In our view an abuse of discretion could be found, absent an effective request for leave to amend *in specified ways*, only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 [282 Cal.Rptr. 80] (*CAMSI IV*).) Here, plaintiffs did not state in the trial court new facts demonstrating they could successfully amend the complaint and a potentially effective amendment is not apparent on appeal.

## IV

## VALIDITY OF ASSIGNMENTS OF DEEDS OF TRUST

Plaintiffs contend the trial court abused its discretion in sustaining without leave to amend Fannie Mae's demurrer to the fifth and sixth causes of action to set aside the trustee's sale and to void or cancel the trustee's deed upon sale. Plaintiffs do not argue that the trial court erred in sustaining Fannie Mae's demurrer to the fifth and sixth causes of action. Rather, plaintiffs argue

they should be granted leave to amend because plaintiffs can allege facts demonstrating that the assignments of the DOT and note from MERS to OneWest and from OneWest to Fannie Mae were invalid. As a consequence, Fannie Mae had no beneficiary interest in plaintiffs' property and could not exercise the power of sale and foreclose on the property.

During the hearing on the demurrer to the SAC, the trial court concluded that plaintiffs had not demonstrated anything improper in the foreclosure process. Plaintiffs argued JC San Pedro signed MERS's DOT assignment but he did not work for MERS. Rather, he worked for OneWest, and therefore the assignment of the DOT from MERS to OneWest was invalid. Fannie Mae argued that attached to the reply was a document showing that JC San Pedro was authorized to sign the assignment as an employee of MERS. MERS worked for the lenders, and JC San Pedro was vice-president of OneWest and former vice-president of Indymac, before it went into receivership. Plaintiffs objected to the court considering the information provided by Fannie Mae's attorney because it could not be judicially noticed.

Plaintiffs further argued that, even assuming JC San Pedro was an agent of MERS, he had to be an agent of Indymac because he was assigning Indymac's interest, and he could not assign Indymac's interest since Indymac had dissolved. The trial court responded that it disagreed with plaintiffs and sustained the demurrer without leave to amend.

A. *Proposed New Facts*

Plaintiffs now claim they can amend their complaint to allege the new fact that MERS did not have an agency agreement with IndyMac Federal or FDIC. Plaintiffs note they are not claiming that MERS did not have authority to assign the note and DOT on behalf of the original lender, Indymac. Rather, plaintiffs are attacking MERS's ability to assign the DOT and note on behalf of IndyMac Federal and FDIC. Plaintiffs claim that under *Fontenot v. ells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 [129 Cal.Rptr.3d 467] (*Fontenot*),the assignments of the DOT and note to OneWest and Fannie Mae were void because there was no agency agreement between MERS and the successor lenders and assigns, FDIC and IndyMac Federal. Plaintiffs also argue they can allege the following new facts which demonstrate the DOT assignments were void: (1) JC San Pedro, not MERS, signed the note and assignment of DOT to OneWest; (2) JC San Pedro is not employed by MERS, FDIC, or IndyMac Federal; (3) there is no agency agreement between JC San Pedro and MERS; (4) there is no agency agreement between JC San Pedro and FDIC; (5) there is no agency agreement between JC San Pedro and IndyMac Federal; (6) the note was never assigned or delivered to Fannie Mae and Fannie Mae was never in possession

of the note; (7) Fannie Mae did not acquire the rights of OneWest, FDIC, IndyMac Federal or Indymac, including through subrogation; and (8) Fannie Mae is not a successor to OneWest, FDIC, IndyMac Federal or Indymac. These facts, plaintiffs argue, demonstrate that Fannie Mae was never assigned the note or DOT and therefore Fannie Mae was not entitled to enforce the note and DOT. Furthermore, plaintiffs argue that whether the assignments of the note and DOT were valid is a question of fact and it is inappropriate to decide the factual issue by demurrer.

■ We conclude plaintiffs have not met their burden of demonstrating that a potentially effective amendment is apparent on appeal. (*CAMSI IV, supra*, 230 Cal.App.3d 1525, 1542.) In *Gomes*, the court stated that to allege a cause of action to set aside a foreclosure sale, there must be a specific factual basis for alleging the foreclosure was not initiated by the correct party. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1156 [121 Cal.Rptr.3d 819] (*Gomes*).) The *Gomes* court further stated: "As an independent ground for affirming the order sustaining the demurrer, we conclude that even if there was a legal basis for an action to determine whether MERS has authority to initiate a foreclosure proceeding, the deed of trust—which Gomes has attached to his complaint—establishes as a factual matter that his claims lack merit. As stated in the deed of trust, Gomes agreed by executing that document that MERS has the authority to initiate a foreclosure. Specifically, Gomes agreed that 'MERS (as nominee for Lender and Lender's successors and assigns) has . . . the right to foreclose and sell the Property.' The deed of trust contains no suggestion that the lender or its successors and assigns must provide Gomes with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated. Gomes's agreement that MERS has the authority to foreclose thus precludes him from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so." (*Id.* at p. 1157, fn. omitted.) This applies equally in the instant case to MERS and its assignees and successors, OneWest and Fannie Mae.

As explained in *Fontenot*, the " 'MERS System' " is "a method devised by the mortgage banking industry to facilitate the securitization of real property debt instruments. As described in *Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking & Finance* (2005) 270 Neb. 529 [704 N.W.2d 784], MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.]" (*Fontenot, supra*, 198 Cal.App.4th at p. 267.) Under this system, the owner of a promissory note secured by a DOT, which oftentimes

is the lender, "is designated as the beneficiary of the deed of trust. (11 Thompson on Real Property (2d ed. 1998) § 94.02(b)(7)(i), p. 346.) Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender. This aspect of the system has come under attack in a number of state and federal decisions across the country, under a variety of legal theories. The decisions have generally, although by no means universally, found that the use of MERS does not invalidate a foreclosure sale that is otherwise substantively and procedurally proper." (*Ibid.*)

In *Fontenot, supra*, 198 Cal.App.4th 256, also a wrongful foreclosure action, the borrower argued that the recorded assignment of the DOT and note from MERS to the bank was invalid because MERS was not the actual beneficiary, but rather was acting as nominee for the lender, and never held an assignable interest in the note. (*Id.* at p. 262.) The court in *Fontenot* affirmed the trial court ruling sustaining the demurrer without leave to amend. (*Id.* at p. 276.) The court concluded that the trial court did not abuse its discretion in concluding that MERS had authority to exercise the legal rights of the lender, including the right to foreclose, since the DOT stated that, as a nominee for the lender and the lender's successors and assigns, MERS had the right to exercise all interests of the beneficiary, including foreclosing on the property. (*Id.* at pp. 262–263, 266–267.)

Likewise, in the instant case, plaintiffs agreed in the original DOT that MERS held the right to exercise all interests and rights held by the lender and its successors and assigns, including the right to assign the DOT and to foreclose on plaintiffs' property. The DOT states: "Borrower [(plaintiffs)] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

■ As the court in *Fontenot* explained, "the ' "comprehensive" ' statutory framework regulating nonjudicial foreclosure, Civil Code sections 2924 through 2924k, did not require the agent of a beneficial owner, such as MERS, to demonstrate that it was authorized by the owner before proceeding with foreclosure, at least in the absence of a factual allegation suggesting the agent lacked authority. (*Gomes*, [*supra*, 192 Cal.App.4th] at pp. 1154–1156.) As the court reasoned, Civil Code section 2924, subdivision (a)(1), which states that a trustee, mortgagee, or beneficiary, or an agent of any of them, may initiate foreclosure, does not include a requirement that an agent

demonstrate authorization by its principal. (*Gomes*, at pp. 1155–1156.)" (*Fontenot, supra*, 198 Cal.App.4th at p. 268.)

In *Fontenot*, the court took judicial notice of the recorded DOT and concluded that MERS's status as nominee beneficiary was " 'not reasonably subject to dispute.' " (*Fontenot, supra*, 198 Cal.App.4th at p. 266.) Therefore any lack of a possessory interest in the note, which the plaintiff claimed was necessary to foreclose on the DOT, was "insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender." (*Id*. at p. 271.) But under *Fontenot*, MERS could assign both the DOT and note because it was presumed MERS had authority to do so on behalf of the lender, which had an interest in the note. (*Id*. at pp. 268, 270.)

Here, plaintiffs are not claiming the lender committed misconduct by foreclosing on plaintiffs. Rather, plaintiffs are attempting to allege a defect in MERS's assignment of the DOT to OneWest, without providing any specific facts establishing such a defect. Plaintiffs argue MERS lacked authority to assign the DOT to OneWest because FDIC and IndyMac Federal, the successors and assigns of the original lender, Indymac, did not have an agency agreement with MERS. But this does not necessarily defeat the foreclosure sale because plaintiffs agreed in the DOT that MERS had the right to exercise all rights of the lender, including foreclosing on and selling plaintiffs' property.

We thus conclude plaintiffs have not demonstrated an abuse of discretion in the trial court denying plaintiffs leave to amend the fifth and sixth causes of action to set aside the foreclosure sale. The documents attached to the SAC establish that plaintiffs were in default, the lender and beneficiary were entitled to foreclose, the trustee provided proper notice of the default and intent to conduct a nonjudicial foreclosure sale, and the foreclosure sale was conducted properly, with Fannie Mae purchasing the property. Plaintiffs did not allege any facts in the SAC or state any new facts during the hearing on the demurrer demonstrating the ability to successfully amend the fifth and sixth causes of action, and the proposed new facts raised in the instant appeal do not rebut the presumption the nonjudicial foreclosure was conducted properly. "[A] nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [26 Cal.Rptr.3d 413] ['It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity.']; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 [20 Cal.Rptr.3d 1]; [citation].)" (*Fontenot, supra*, 198 Cal.App.4th at p. 270.)

Furthermore, since the assignment of the debt (the promissory note), as opposed to the security (the DOT), commonly is not recorded, the lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to plaintiffs. (*Fontenot, supra,* 198 Cal.App.4th at p. 272.) This is why in *Fontenot* the court rejected the plaintiff's claim to set aside the foreclosure as void based solely on the alleged invalidity of the MERS assignment of the note and DOT. The *Fontenot* court stated: "plaintiff was required to allege that HSBC did not receive a valid assignment of the debt *in any manner.* Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff. To state a claim, plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other manner. There is no such allegation." (*Id.* at pp. 271–272, fn. omitted.) Likewise, here, the note could have been assigned to OneWest and Fannie Mae, who then would have had the authority to foreclose, regardless of MERS's assignment of the DOT.

██ We conclude plaintiffs failed affirmatively to plead specific facts demonstrating the sale was invalid and a potentially effective amendment is not apparent on appeal. (*Fontenot, supra,* 198 Cal.App.4th at p. 270; *CAMSI IV, supra,* 230 Cal.App.3d at p. 1542.) Furthermore, this court will not rewrite the complaint based on new facts raised for the first time on appeal. While we may consider on appeal whether the trial court abused its discretion in not granting leave to amend, we look only to the SAC and any new facts raised in the trial court during the hearing on the demurrer. Because the DOT stated MERS held all the rights of the lender, including the right to foreclose, there was no abuse of discretion in the trial court concluding plaintiffs were precluded from contesting MERS's authority to assign to OneWest the DOT and note. Since a potentially effective amendment was not apparent in the trial court, there was no abuse of discretion in sustaining Fannie Mae's demurrer without leave to amend. Even if plaintiffs had properly raised the proposed new facts in the trial court, the new facts do not cure the defects in the fifth and sixth causes of action, seeking to set aside the foreclosure sale.

B. *Substitution of Trustee*

Plaintiffs also argue the foreclosure sale is void because the substitution of trustee was invalid. Plaintiffs assert OneWest did not have the power to execute the substitution of trustee, in which Trustee Corps replaced the original trustee, First American. Specifically, plaintiffs argue the substitution of trustee was invalid because the DOT stated that only the lender could

execute a substitution of trustee. In the instant case, the substitution was executed by OneWest, as beneficiary of the DOT. Plaintiffs assert that, since the assignment of the DOT to OneWest was void, the substitution of trustee was void as well.

But as discussed above, the allegations in the SAC and the proposed new facts do not demonstrate that the DOT assignment to OneWest was invalid. In turn, there was no showing that the substitution of trustee was void. Furthermore, plaintiffs agreed in the DOT that MERS assumed all interest and rights of the lender and its successors and assigns, which would appear to include IndyMac Federal, FDIC, and OneWest. OneWest thus had the authority, as either a successor or assign of the original lender or as an assignee of MERS, to execute the substitution of trustee, substituting Trustee Corps as trustee in place of First American.

## C. *Prejudice*

■ Even assuming plaintiffs can allege specific facts showing that MERS assignment of the DOT to OneWest and OneWest's assignment to Fannie Mae were void, under *Fontenot* plaintiffs must also show plaintiffs were prejudiced: "We also note a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. ([Citation]; *Knapp v. Doherty*[ (2004) 123 Cal.App.4th 76,] 86, fn. 4 [20 Cal.Rptr.3d 1] ['A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption "by pleading and proving an improper procedure *and the resulting prejudice.*" ' (italics added)]; *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097–1098 [106 Cal.Rptr.2d 443]] [collusion resulted in inadequate sale price]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [86 Cal.Rptr.2d 657] [failure to comply with procedural requirements must cause prejudice to plaintiff].) Prejudice is not presumed from 'mere irregularities' in the process. [Citation.] Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment

of the note (see, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7–8 [89 Cal.Rptr. 323] [failure by lender to accept timely tender]), nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot, supra*, 198 Cal.App.4th at p. 272.)

Likewise, here, there is no showing of prejudice, even assuming there were procedural defects in the assignment of the DOT from MERS to OneWest and the substitution of trustee. According to the facts alleged in the SAC and attached documents, plaintiffs borrowed $318,500, plus interest; plaintiffs agreed that MERS, as beneficiary nominee, had the right to exercise all rights of the lender, including foreclosing and selling plaintiffs' property; MERS assigned its beneficiary interest to OneWest; plaintiffs defaulted on their loan and owed $15,200 on their mortgage; plaintiffs did not tender payment and cure the default; OneWest purchased IndyMac Federal's assets; OneWest assigned the DOT and note to Fannie Mae; Fannie Mae initiated foreclosure through the trustee, Trustee Corps; and Fannie Mae purchased plaintiffs' property during the nonjudicial foreclosure sale. If MERS lacked authority to assign the DOT and note to OneWest and, in turn, OneWest lacked authority to assign the DOT and note to Fannie Mae, the true victims were not plaintiffs but the lender. (*Fontenot, supra*, 198 Cal.App.4th at p. 272.)

V

CAUSE OF ACTION UNDER SECTION 2932.5

Plaintiffs contend the trial court abused its discretion in sustaining the demurrer to the first cause of action for violation of section 2932.5. Plaintiffs argue that since the trial court overruled Fannie Mae's demurrer to the first cause of action in the original complaint, the trial court could not change its mind later and sustain Fannie Mae's subsequent demurrers to the same cause of action alleged in the first and second amended complaints.

This argument lacks merit because this court is not precluded from reconsidering whether the first cause of action alleged a viable claim, regardless of the impropriety of the trial court initially overruling Fannie Mae's demurrer and then later sustaining a demurrer to the same cause of

action: "[N]ow that the case is before this court, we are free to review both Judge Finkel's and Judge Haber's orders and render an opinion based on the correct rule of law. We are not required to sustain an erroneous trial court ruling because it came first." (*Bennett v. Suncloud* (1997) 56 Cal.App.4th 91, 97 [65 Cal.Rptr.2d 80].) The court in *Berg & Berg* agreed, stating, "the role of this court entails review of the trial court's ruling, not its rationale. Thus, even if the trial court here were constrained by its prior rulings in its consideration of the grounds raised on demurrers to the third amended complaint, on review of the judgment, we are not so constrained and are free to render an opinion based on the correct rule of law." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1036 [100 Cal.Rptr.3d 875], citing *Bennett*, at p. 97.)

In challenging the trial court's ruling sustaining without leave to amend Fannie Mae's demurrer to the first cause of action, plaintiffs argue that Fannie Mae did not have the power to foreclose because the assignment of the DOT to Fannie Mae was not recorded before the foreclosure sale, as required under section 2932.5. Plaintiffs alleged that OneWest's assignment of the DOT to Fannie Mae, which foreclosed on plaintiffs' property, was not acknowledged and recorded until October 5, 2009, after the foreclosure sale in September 2009. Therefore the foreclosure sale was void under section 2932.5.

Section 2932.5 states: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

■ Section 2932.5 is inapplicable in the instant case. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 123 [130 Cal.Rptr.3d 815]; *Roque v. Suntrust Mortgage, Inc.* (N.D.Cal., Feb. 9, 2010, No. C-09-00040 RMW) 2010 U.S.Dist. Lexis 11546, p. *1.) It is well established that section 2932.5 does not apply to trust deeds, in which the power of sale is granted to a third party, the trustee. (*Calvo*, at p. 123.) Section 2932.5 applies to mortgages, in which the mortgagor or borrower has granted a power of sale to the mortgagee or lender.

Plaintiffs urge this court to ignore *Calvo v. HSBC Bank USA, N.A., supra*, 199 Cal.App.4th at page 123, in which the court held section 2932.5 does not

apply to DOT's. We reject plaintiffs' argument that *Calvo* is not well reasoned. To the contrary, we agree with its analysis. In discussing the evolution of the common use of DOT's in real property transactions, the court in *Calvo* noted that "In California, over the course of the past century, deeds of trust have largely replaced mortgages as the primary real property security device. [Citation.] Thus, section 2932.5 (and its predecessor, § 858) became practically obsolete and were generally ignored by borrowers, creditors, and the California courts. On the other hand, other statutes expressly give MERS the right to initiate foreclosure on behalf of HSBC Bank [(the lender)] irrespective of the recording of a substitution of trustee." (*Calvo*, at p. 125.)

As explained in *Roque v. Suntrust Mortgage, Inc., supra*, 2010 U.S.Dist. Lexis 11546 at pages *7–*8, "California law recognizes two distinct ways in which a loan may be secured by real property, either by a mortgage or by a deed of trust. [Citation.] A deed of trust generally involves three parties, the borrower/trustor . . . who conveys the right to sell the property to the trustee, for the benefit of the lender/beneficiary. [Citation.] The practical effect is the creation of a lien on the subject property. [Citation.] Notwithstanding that the right of sale is formally with the trustee, both the beneficiary and the trustee may commence the non-judicial foreclosure process. [Citation] (*citing* Cal. Code. Civ. Proc. § 725a). [¶] Section 2932.5 applies to mortgages, not deeds of trust. *It applies only to mortgages* that give a power of sale to the creditor, *not to deeds of trust* which grant a power of sale to the trustee. Trustees regularly foreclose on behalf of assignees for the original beneficiary. [Citation.] . . . As the court previously concluded, non-judicial foreclosures are governed exclusively by Cal. Civ. Code Section 2924-2924i." (Italics added.) Section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents," may initiate the foreclosure process. (*Calvo v. HSBC Bank USA, N.A., supra*, 199 Cal.App.4th at p. 123.)

As beneficiary of the DOT at the time of the foreclosure sale of plaintiffs' property, Fannie Mae had the statutory right to initiate foreclosure pursuant to section 2924, subdivision (a)(1). Nothing in the comprehensive statutory scheme governing nonjudicial foreclosures (§§ 2924 through 2924*l*) contains a requirement that OneWest's assignment of the DOT to Fannie Mae must be acknowledged and recorded before the foreclosure sale on September 23, 2009. Because section 2932.5 is inapplicable, the trial court did not abuse its discretion in sustaining Fannie Mae's demurrer to the first cause of action without leave to amend.

## VI

## DISPOSITION

We affirm the judgment of dismissal. Fannie Mae is awarded its costs on appeal.

McKinster, Acting P. J., and King, J., concurred.

A petition for a rehearing was denied June 12, 2012 and appellants' petition for review by the Supreme Court was denied August 8, 2012, S203718.