Filed 8/19/14  Franklin v. Town Capital I CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT FRANKLIN et al., | B251328 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. PC053949) |
| v. | |
| TOWN CAPITAL I, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Rodriguez Law Group, Patricia Rodriguez and Sevag Simonian for Plaintiffs and Appellants.

Pite & Duncan, Laurel I. Handley, Deborah A. Newman and Robert Collings Little for Defendant and Respondent Town Capital I, LLC.

Anglin, Flewelling, Rasmussen, Campbell & Trytten, Robert A. Bailey and Frederick J. Hickman for Defendants and Respondents FCI Lender Services, Inc. and Double F Management Group, LLC.

Appellants Robert and Debbie Franklin brought suit against respondents Town Capital I, LLC (Town Capital), Double F Management Group, LLC (Double F), and FCI Lender Services, Inc. (FCI) alleging that respondents improperly threatened to foreclose on appellants' home under a deed of trust, and that defects in the chain of title rendered respondents unable to exercise the power of sale granted by the deed of trust or assert any right over the property.[1]  The trial court found that the complaint was barred by res judicata, as two prior actions asserting similar claims had been filed against these respondents in federal court.  We concur with respect to all but one of the claims, viz., that Town Capital failed to notify appellants of the transfer of the obligation to a new lender, and further hold that none of the claims asserted in the underlying complaint stated a cognizable cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Background Facts*

In 2007, appellants bought a home in Santa Clarita.  They executed a promissory note in the amount of $500,000 secured by a deed of trust on the property.[2]  Their original lender was Accredited Home Lenders, Inc. (AHL).  The trustee named in the deed of trust was Stewart Title Guaranty.  Mortgage Electronic Registration Systems, Inc. (MERS) was designated as the nominee for

---

[1]  Although the complaint did not so allege, it appears from the record that the foreclosure may have taken place prior to its filing.

[2]  As explained in *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507 (*Jenkins*):  "The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust" which "conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note. [Citations.]  The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to foreclose on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note.  [Citations.]"  (*Id*. at pp. 507-508.)

2

the lender and the lender's successors and assigns.[3] The deed of trust provided that the note or a partial interest in the note and deed of trust could be sold without prior notice to the borrowers. It further provided that the beneficiary could, at its option, appoint a successor trustee.

In November 2009, appellants entered into a loan modification agreement with the loan servicer, under which they were to pay a reduced monthly principal and interest payment from January 2010 through December 2011. By letter dated July 13, 2011, Town Capital informed appellants that it had purchased the loan and that servicing rights were transferred to FCI, to whom appellants were directed to send future payments beginning July 1, 2011. Nine months later, on April 13, 2012, a document was recorded indicating that MERS, as nominee of AHL, transferred all beneficial interest under the deed of trust to Town Capital. That same day, a second instrument was recorded indicating Town Capital transferred all beneficial interest under the deed of trust to Double F.

A few days earlier, on April 11, 2012, FCI, identifying itself as the duly appointed trustee or duly authorized or designated agent for the beneficiary under the deed of trust, recorded a notice of default, stating appellants were nearly $100,000 behind in their payments. The trustee's sale was set for October 1, 2012.

---

[3] "'MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender.'" (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 83 (*Siliga*), quoting *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*).)

B. *Prior Complaints*

    1. *Adversary Complaint*

After receiving the notice of default, appellant Robert Franklin filed for bankruptcy and filed an adversary complaint in the bankruptcy proceeding naming as defendants respondents FCI, Town Capital, and Double F, as well as AHL, U.S. Bank National Association (U.S. Bank), and MERS. The complaint alleged that appellants' loan, like many others at the time, was securitized and bundled into a trust.[4] According to the complaint, it was thereafter improperly transferred or assigned to multiple parties, creating doubt as to the ownership of the indebtedness and the right of any party to proceed with the foreclosure.[5] The complaint contained 13 causes of action, nine of which named respondents. These claims were for declaratory relief and quiet title, both essentially seeking a declaration that respondents had no interest in the property; fraudulent concealment in failing to disclose respondents' alleged lack of proof of ownership of the subject deed of trust and note; negligence in maintaining loan documents and records; breach of the covenant of good faith and fair dealing and of fiduciary duty by attempting to

---

[4] "In simplified terms, 'securitization' is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans." (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082 (*Glaski*).)

[5] Specifically, it was alleged that (1) the assignment of the loan to the trust which held it to back up investment securities was defective because it occurred after the trust's closing date; (2) the assignment to Town Capital in April 2012 was defective because it was executed by an employee of Town Capital falsely claiming to be an agent of MERS; (3) the April 2012 assignment from Town Capital to Double F was defective because it was recorded prior to the assignment to Town Capital; (4) FCI lacked authority to proceed with the foreclosure because Stewart Title was the trustee named in the deed of trust and no substitution of trustee had been recorded; and (5) ownership interest in the promissory note and deed of trust were split during the securitization process.

exercise the power of sale in the deed of trust; and "unconscionability" based on attempting to enforce a loan which had been unaffordable at its inception.[6]

On September 11, Franklin filed a notice of dismissal requesting that the court dismiss the complaint without prejudice. On September 21, the court issued the order dismissing the complaint as requested.

### 2. *District Court Complaint*

A few days later, on September 25, 2012, appellants filed a complaint in federal district court. The same parties were named defendants: respondents herein, AHL, U.S. Bank, and MERS. The factual allegations were essentially the same as the allegations of the adversary complaint filed in the bankruptcy proceeding, except that appellants alleged they were "never in default" on the loan, and that they "made each and every monthly mortgage payment on time." Appellants also added a claim for intentional infliction of emotional distress based on the defendants' actions in beginning foreclosure proceedings and on appellants' conversations with an agent of FCI who allegedly lied about the value of their home in an attempt to persuade them to accede to the foreclosure. The claims for

---

[6] Claims for fraud in inducing Franklin to enter into the loan, "negligent lending," and violation of 24 C.F.R. section 3500.14 (part of the Real Estate Settlement Procedures Act, prohibiting excessive loan fees) were alleged against the original lender, AHL only. A claim for violation of 15 U.S.C. section 1641(g) for failing to notify Franklin that the deed of trust had been transferred was asserted against U.S. Bank only. Another claim, for breach of contract, named AHL, MERS, U.S. Bank and respondent Town Capital, but alleged only that AHL breached the parties' contract by allowing the loan to be securitized. Similarly, a claim for violation of Business and Professions Code section 17200, et seq. (the Unfair Competition Law) was asserted against "all defendants" but alleged as deceptive practices "making untrue or misleading statements regarding the amount of the Plaintiff's income, attaching bogus fees and closing costs, . . . charging excessive interest rates," and "falsifying . . . the Plaintiff's loan application," none of which appears to be related to any action that could have been taken by an assignee of the loan.

5

declaratory relief, fraud, negligent lending, fraudulent concealment, negligence, breach of contract, breach of the covenant of good faith and fair dealing, violation of 15 U.S.C. section 1641(g), violation of 24 C.F.R. section 3500.14, breach of fiduciary duty, quiet title, and violation of the Unfair Competition Law were essentially identical to the claims asserted in the adversary complaint.

Appellants sought a temporary restraining order (TRO) and preliminary injunction to prevent the foreclosure, scheduled to take place October 1, 2012. By order dated October 1, the district court denied the application, finding appellants unlikely to succeed on the merits. The court found that insofar as appellants' claims derived from the allegations that the defendants failed to assign the note to the Trust until after the closing date set forth in the pooling and servicing agreement governing the trust, "because [appellants] were not a party to the [pooling and servicing agreement,] they . . . 'lack[ed] standing to challenge the process by which [their] mortgage was (or was not) securitized . . . .'" (Quoting *Junger v. Bank of America, N.A.* (C.D. Cal., Feb. 12, 2012, No. CV 11-10419 CAS (VBKx)) 2012 U.S. Dist. LEXIS 23917.) To the extent appellants claimed the pending foreclosure was invalid because respondents never received proper assignment of the debt, the court found "[t]his argument . . . fails as a matter of law because California courts have concluded that California's nonjudicial foreclosure scheme 'does not provide for a preemptive suit challenging standing' to foreclose." (Quoting *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46.) The court further found that appellants failed to allege damages arising from the alleged failure to comply with the notice provisions of 15 U.S.C. section 1641(g). After the request for TRO and preliminary injunction was denied, appellant filed a notice of voluntary dismissal.

6

C. *Underlying Complaint*

On October 26, 2012, appellants filed the underlying complaint, naming as defendants respondents FCI, Town Capital, and Double F only, omitting AHL, U.S. Bank, and MERS. Factual allegations pertaining to the alleged defects in the chain of title remained, including that the April 2012 assignment to Town Capital was defective, that the April 2012 assignment from Town Capital to Double F was defective, that FCI's authority to proceed with the foreclosure was not clear, and that the note and deed of trust were split and no longer held by the same party. As to the default, rather than asserting that they were never in default and had made every mortgage payment as alleged in the district court complaint, appellants claimed that FCI and Town Capital "harass[ed] [appellants] with notices claiming that [they] were in default on the loan," "accepted and cashed all payments submitted by [appellants] through February 2012," and presented an inaccurate amount due in the notice of default.

In the first through third causes of action for intentional and negligent misrepresentation and conspiracy to defraud, appellants alleged that Double F and Town Capital falsely represented they held a beneficial interest in the deed of trust, and that FCI falsely represented it was the duly appointed trustee under the deed of trust. The fourth cause of action for slander of title alleged that respondents caused false and invalid assignments of their deed of trust to be recorded. The fifth cause of action for violation of 15 U.S.C. section 1641(g) alleged that Town Capital failed to provide appellants with written notice within 30 days after it was assigned the mortgage. The sixth cause of action for violation of California's Unfair Competition Law alleged that respondents could not establish proper transfer and/or endorsement of the promissory note or proper assignment of the deed of trust, and that they recorded false or fraudulent documents to fill in the gaps in the chain of title. The seventh cause of action for wrongful foreclosure alleged that

7

respondents lacked a legal basis to foreclose because Double F had no interest in the property and FCI had no legal right to act as trustee. The eighth cause of action for intentional infliction of emotional distress alleged that respondents' conduct in foreclosing on appellants' home and misrepresenting the value of the home represented extreme and outrageous conduct. The ninth cause of action for declaratory relief sought a determination of the parties' rights and duties with respect to the deed of trust and the note, and a declaration that respondents had no interest in the subject property.

Double F demurred to the complaint, contending it was substantively defective and that it was barred by res judicata, as the second federal court dismissal constituted an adjudication on the merits under rule 41(a) of the Federal Rules of Civil Procedure (rule 41(a)). Double F requested that the court take judicial notice of the two prior complaints. FCI joined in Double F's demurrer. Town Capital answered and moved for judgment on the pleadings. Town Capital also contended that the complaint was substantively meritless and barred by res judicata under rule 41(a), and asked the court to take judicial notice of the prior complaints. The trial court sustained the demurrer without leave to amend "on the grounds of res judicata and collateral estoppel, and as set forth in the demurrers and the supporting points and authorities of [Double F]." It granted the motion for judgment on the pleadings without leave to amend based on "all the arguments and pleadings submitted in support of and in opposition to the Motion . . . ." Judgment was entered and this appeal followed.

## DISCUSSION

A. *Standard of Review*

When reviewing a ruling on a demurrer, we review the complaint de novo to determine whether it alleged a valid cause of action under any theory, treating all

material facts properly pleaded as true.  (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 (*Herrera*).)  We consider matters which may be judicially noticed and "'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'"  (*Ibid*.)  "Our consideration of the facts alleged includes 'those evidentiary facts found in recitals of exhibits attached to a complaint.'"  (*Glaski*, *supra*, 218 Cal.App.4th at p. 1090.)  Finally, we determine "'whether there is a reasonable possibility that the defect can be cured by amendment . . . .'"  (*Herrera*, *supra*, at p. 1501.)  "'The burden of proving such reasonable possibility is squarely on the plaintiff.'"  (*Ibid*.)

"'A motion for judgment on the pleadings, like a general demurrer, challenges the sufficiency of the plaintiff's cause of action and raises the legal issue, regardless of the existence of triable issues of fact, of whether the complaint states a cause of action.  [Citation.]'"  (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213, quoting *Brownell v. Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 793.)  "The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer."  (*Ellerbee v. County of Los Angeles*, *supra*, at p. 1213, citing *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.)

## B.  *Res Judicata*

The trial court found appellants' claims barred by res judicata.  With one exception, discussed in part C, *infra*, we agree.

Res judicata prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them where a prior suit ended in a judgment on the merits.  (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 896.)  Respondents contended, and the trial court agreed, that the voluntary dismissal of the federal district court litigation represented a judgment on the

merits under rule 41(a) of the Federal Rules of Civil Procedure.  This rule provides that a plaintiff may dismiss a federal action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment, and that such dismissal is without prejudice unless "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim," in which case "a notice of dismissal operates as an adjudication on the merits."  Although Debbie Franklin was not a party to the adversary complaint filed in bankruptcy court, respondents contend that as she was in privity with her husband, the voluntary dismissal of the federal district court complaint constituted a judgment on merits as to both appellants, thus barring the underlying lawsuit.

On appeal, appellants assert that because the federal complaints were voluntarily dismissed, there could be no adjudication on the merits and thus no application of res judicata.  They neither address rule 41(a) nor argue that its provisions do not apply.  They do not deny being in privity with one another, and they do not contest that their second federal suit was "based on or include[d] the same claim[s]" as those raised in the adversary proceeding.  As noted above, under rule 41(a), a second voluntary dismissal operates as an adjudication on the merits and bars a third suit on the same issues.  (*Commercial Space Mgmt. Co. v. Boeing Co.* (9th Cir. 1999) 193 F.3d 1074, 1076; *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.* (9th Cir. 1991) 933 F.2d 724, 725-726.)  The fact that the plaintiffs purported to dismiss the second complaint "without prejudice" and that there was no actual resolution of the issues does not affect the determination that the second dismissal acted as an adjudication on the merits.  (*Commercial Space Mgmt. Co. v. Boeing Co.*, *supra*, at p. 1076 ["[A] voluntary dismissal of a second action operates as a dismissal on the merits if the plaintiff has previously dismissed an action involving the same claims."]; *Melamed v. Blue Cross of Cal*.

(C.D. Cal., Jan. 13, 2012, No. CV 11-4540 PSG (FFMx)) 2012 U.S. Dist. LEXIS 5074, *10 ["[A]lthough Plaintiffs purported to dismiss their claims 'without prejudice' on both occasions, this does not affect the determination of whether the second dismissal acted as an adjudication on the merits. . . . 'Rule 41 itself prescribe[ed] the effect of [a second] Rule 41(a)(1) dismissal.'"].)

Appellants further contend that the issues raised in the prior actions were not identical to those raised in the underlying complaint. "California courts apply the ""'primary rights' theory"' to 'determine whether two proceedings involve identical causes of action for purposes of claim preclusion.'" (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp*. (2013) 214 Cal.App.4th 1520, 1530, quoting *Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797.) Under the primary rights theory, the key question is the harm suffered as opposed to the particular theory asserted by the litigant. (*Federal Home Loan Bank*, *supra*, at p. 1530.) """"When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right. [Citation.]""" (*Id*. at p. 1531, quoting *Bullock v. Philip Morris USA, Inc*. (2011) 198 Cal.App.4th 543, 557.)

Appellants contend that the crux of the two prior complaints was that the defendants persuaded them to enter into a predatory loan and failed to perform the due diligence necessary to confirm appellants' ability to make the monthly payments, whereas the underlying complaint was based on deficiencies in the securitization process, "rendering invalid any security interest in their [deed of trust]." It is true that the two federal complaints contained allegations -- asserted against AHL only -- that the original lender fraudulently induced appellants to enter into a loan agreement exceeding their ability to pay. With respect to respondents, however, both federal complaints contained substantially the same allegations as asserted in the underlying complaint: that irregularities in the chain

11

of title called into question the right of respondents to proceed with the foreclosure or claim any interest in the note, deed of trust, or the property itself.  The adversary complaint filed in bankruptcy court specifically alleged that the assignments of the deed of trust recorded in April 2012 showing the transfers from AHL to Town Capital and then to Double F were signed by the wrong individuals or entities and recorded in the wrong order; that the promissory note and deed of trust were split during the securitization process, allegedly precluding any foreclosure from going forward; and that the absence of a recorded substitution of trustee for the deed of trust left doubt as to FCI's right to act in that role.  These same allegations appeared in the district court complaint and were at the heart of the underlying complaint, forming the factual basis for virtually all of appellants' claims, from misrepresentation to declaratory relief.  Even the claim for violation of the Unfair Competition Law in the underlying complaint alleged that respondents "cannot establish proper transfer and/or endorsement of the Promissory Note and prior assignment of the Deed of Trust" and, therefore, "do not have the right to foreclose on the Property" or "exercise the power of sale within the Deed."  Accordingly, appellants have asserted no basis for reversing the trial court's finding that the majority of claims alleged in the underlying complaint were barred by res judicata.

C.  *15 U.S.C. § 1641(g)*

The one exception to the res judicata bar is the claim under 15 U.S.C. section 1641(g) (part of the Truth in Lending Act), which states that "[n]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ."  Appellants did not allege that Town Capital violated this provision in either of the federal complaints, and the allegation that a lender failed to comply with this

provision does not involve the same primary right as the allegation that the lender's interest in a promissory note or deed of trust is suspect.

Our conclusion that res judicata does not apply to appellants' 15 U.S.C. section 1641(g) claim against Town Capital does not, however, lead us to conclude the claim should be revived. A claimant under this provision must allege and prove not only that no notice was sent by the lender, but also that the borrower relied to its detriment and suffered actual damages. (*Turner v. Beneficial Corp.* (11th Cir. 2001) 242 F.3d 1023, 1025-1026; *Santos v. Fed. Nat'l Mortg. Ass'n.* (S.D. Fla. 2012) 889 F.Supp.2d 1363, 1368; *Jaldin v. Recontrust Co., N.A.* (4th Cir. 2013) 539 Fed.Appx. 97, 103.) A violation of this provision might, for example, lead a borrower to pay the wrong lender, accrue additional interest or finance charges, or incur unwarranted damage to his or her credit rating. (See *Deerink v. Bank of N.Y. Mellon, N.A.* (E.D. Cal., Aug. 6, 2012, No. 2:11-cv-01735-MCE-EFB) 2012 U.S. Dist. LEXIS 109926, *15-16; *Diaz v. BSI Fin. Servs*. (C.D. Cal., Jun. 5, 2012, No. CV 12-01461 GAF (Ex)) 2012 U.S. Dist. LEXIS 78798, *11-12; *Soares v. ReconTrust Co., N.A.* (N.D. Cal., May 25, 2012, Case No. 12-00070) 2012 U.S. Dist. LEXIS 73383, *15.) Appellants contend in their brief that they were never provided notice of the assignment and never had reason to believe an assignment had been made. This assertion is belied by appellants' own pleadings. While their complaint alleged that Town Capital failed to provide notice "within 30 days after the date on which it was allegedly assigned the mortgage" or notice "indicating the exact date of the purported assignment," appellants attached to the complaint a notice they received from Town Capital dated July 13, 2011, informing them that their loan had been transferred effective July 1, and that payments and inquiries should be directed to the new loan servicer, FCI. This indicates at most that the required notice was sent a few weeks late. Moreover, appellants did not allege any damage resulting from Town Capital's

apparent tardiness. On appeal, they claim they could have "engage[d]" Town Capital and "sought foreclosure prevention alternatives . . . ." However, the facts alleged in the complaint establish that appellants did engage in extensive discussions with Town Capital's agent, FCI, well before the foreclosure was scheduled.[7] Accordingly, the underlying complaint failed to state a cause of action under section 1641(g).[8]

D. *Purported Irregularities in the Chain of Title*

With respect to the remainder of appellants' claims, even were they not barred by res judicata, we would find they failed to state cognizable claims. California courts have held that the provisions of this state's nonjudicial foreclosure scheme (Civ. Code, §§ 2924-2924k) """"cover every aspect of [the] exercise of [a] power of sale contained in a deed of trust." [Citation.]"" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 509, quoting *Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).) A defaulting debtor is free to pursue a judicial action for wrongful foreclosure, but only when such a claim ""'[is] not inconsistent with the policies behind the [foreclosure] statutes.'"" (*Jenkins*, *supra*, at p. 510, italics omitted, quoting *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070.) An action seeking to create a nonstatutory additional requirement that the foreclosing entity demonstrate in court that it is authorized to initiate a foreclosure "would be inconsistent with the policy behind

---

[7]    Indeed, appellants asserted they were offered a cash settlement by FCI to vacate the premises in lieu of foreclosure.

[8]    Although respondents did not raise statute of limitations in their demurrer or motion for judgment on the pleadings, we note that actions under the Truth in Lending Act are subject to a one-year statute of limitations. (15 U.S.C. § 1640(e).) Appellants' October 2012 complaint was filed more than one year from the date of the apparently tardy notice from Town Capital.

14

nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.) Accordingly, "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Jenkins*, *supra*, at p. 511.)

California cases have further held that in a post-foreclosure action alleging imperfections or irregularities in the foreclosure process or the foreclosing party's chain of title, the borrower must allege that the claimed imperfections were actually prejudicial to his or her interests or led to injury or damage. (*Herrera*, *supra,* 205 Cal.App.4th at pp. 1507-1508; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272; *Siliga*, *supra*, 219 Cal.App.4th at p. 85.) Where an assignment of a loan or deed of trust has been made in an improper manner or by someone lacking authority, the borrower ordinarily suffers no injury, as the assignment does not alter the borrower's obligation to repay the loan, but "merely substitute[s] one creditor for another, without changing [the borrower's] obligations . . . ." (*Fontenot*, *supra*, at p. 272.) Thus, the borrower has no standing to complain about any alleged lack of authority of an assignor or any other defect in the assignment. (*Siliga*, *supra*, at p. 85; accord, *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, 1207; *Jenkins*, *supra*, at p. 515.) As numerous courts have concluded, the "'true victim'" of an unauthorized or invalid transfer is the "'individual or entity that believes it has a present beneficial interest in the promissory note'" who "'may suffer the unauthorized loss of its interest in the note.'" (*Yvanova v. New Century Mortgage Corporation* (2014) 226 Cal.App.4th 495, 501, quoting *Jenkins*, *supra*, at p. 515; accord, *Fontenot*, *supra,* at p. 272; *Herrera*, *supra*, at p. 1508.) The borrower may not attempt to take advantage of "'the theoretical claims of hypothetical transferors and transferees' to assert causes

15

of action for declaratory relief or wrongful foreclosure." (*Yvanova v. New Century Mortgage Corporation*, *supra*, at p. 501, quoting *Jenkins*, *supra*, 216 Cal.App.4th at p. 515.)

Here, all the causes of action set forth in the complaint rely on the theoretical claims of hypothetical transferors and transferees, and seek a determination that the existence of the alleged defects and irregularities, without more, entitled appellants to damages or relieved them of any further payment obligations. The complaint asserted that the alleged imperfections in the chain of title precluded respondents from instituting foreclosure or making any claim on the property. The possibility that an unauthorized person signed one of the assignments or that the assignments were recorded some time after the fact, in the wrong order -- or not at all -- caused no obvious prejudice or harm to appellants. Moreover, appellants have suggested no way in which they could amend the complaint to assert prejudice or actual harm. Accordingly, even in the absence of res judicata, we would find the dismissal of the complaint appropriate.[9]

Appellants contend they have asserted a claim as set forth in *Glaski, supra*, 218 Cal.App.4th 1079. That court held that where a loan and deed of trust were transferred to a New York trust as part of the securitization process, but the transfer

---

[9] Of course, a borrower may challenge a threatened foreclosure or pursue a claim for wrongful foreclosure where he or she has fully performed or cured any default. (See, e.g., *Barroso v. Owen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1016-1017 [if, after default, borrower and beneficiary enter into agreement to cure and reinstate the loan, """"no contractual basis remains for exercising the power of sale"""']). In the federal court complaint, appellants alleged that they "made each and every monthly mortgage payment on time." The underlying complaint contained no such allegation, asserting only that when first notified, appellants "disput[ed] the default," and alleging that respondents "accepted and cashed all payments submitted . . . through February 2012." Appellants did not assert as a ground for reversing the judgment below that they had made all payments on their loan. In any event, any such assertion would not alter our conclusion that appellants' claims are independently barred by res judicata.

took place after the formal closing date for the trust, the transfer was void under New York law. (*Id*. at p. 1097.) The court further held that an assignee of a deed of trust whose chain of title includes a void transfer is not a true holder and cannot invoke the power of sale, leaving the borrower free to pursue a claim for wrongful foreclosure. (*Ibid*.) *Glaski* is contrary to the weight of authority. It was specifically rejected by both Division One and Division Six of this District in *Yvanova v. New Century Mortgage Corporation*, *supra*, 226 Cal.App.4th at p. 502, and *Keshtgar v. U.S. Bank*, *N.A., supra*, 226 Cal.App.4th at p. 1207. In addition, it is contrary to the decisions in *Siliga, supra*, 219 Cal.App.4th 75, *Herrera*, *supra*, 205 Cal.App.4th 1495, *Fontenot*, *supra*, 198 Cal.App.4th 256, and *Jenkins*, *supra*, 216 Cal.App.4th at p. 515 that a borrower lacks standing to assert a defect in the chain of title to prevent a foreclosure from going forward or to pursue a claim for wrongful foreclosure absent a showing of prejudice or actual harm. We are persuaded by views expressed by the majority and decline to follow *Glaski*.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18