Filed 8/11/14  Madridejos v. HSBC Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| CECILIO MADRIDEJOS et al., | C071982 |
| Plaintiffs and Appellants, | (Super. Ct. No. PC20110380) |
| v. | |
| HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee, etc., et al., | |
| Defendants and Respondents. | |

Plaintiffs Cecilio and Lucila Madridejos, homeowners who lost their home in foreclosure proceedings, appeal the judgment of dismissal entered after the trial court sustained without leave to amend defendants Wells Fargo Bank, N.A. (Wells Fargo), and HSBC Bank USA, National Association's (HSBC), demurrer to plaintiffs' first amended complaint.  The pleadings are not a model of clarity but appear to present three essential allegations:  1) that the lender imposed sneaky and exorbitant fees resulting in a premature foreclosure; 2) that following plaintiffs' default the lender failed to initiate a modification of their loan and insisted they had no options when, in fact, they did; and

1

3) that there were irregularities in the securitization process rendering the ultimate assignment and sale void.

The Great Recession spawned a foreclosure crisis and an explosion of litigation now reaching the appellate courts across the nation. It is true that recent legislation in California and a few recent cases have provided some relief to distressed homeowners. (Civ. Code, §§ 2923.6, subd. (c), 2923.7, 2924.11; e.g., *Corvello v. Wells Fargo Bank, NA* (9th Cir. 2013) 728 F.3d 878; *Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal., Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 U.S.Dist. Lexis 130800 (*Maynard*); *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*); *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*); *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*).) But the evolution of the law does not discharge plaintiffs' burden to plead specific facts sufficient to state viable causes of action against defendants in this case rather than generalized, wholesale allegations of wrongdoing in the industry. Nor does recitation of new legal developments satisfy their obligation, either in the trial court or on appeal, to state those facts that would cure any deficiencies so as to merit the opportunity to amend their complaint once again. While they assert a whopping dozen causes of action, they fail to cure the fatal factual deficiencies in their lawsuit. We therefore affirm the judgment.

## FACTS

In March 2007 plaintiffs borrowed $696,000 from Provident Funding Associates, L.P. (Provident), to purchase a home in El Dorado Hills. The loan had an adjustable interest rate. Plaintiffs allege defendants misrepresented the terms of what turned out to be a very risky loan defendants intended to resell on the secondary market. The debt was secured by a deed of trust naming First American Title Company as the trustee and Mortgage Electronic Registration Systems, Inc. (MERS), as the "nominee for Lender and Lender's successors and assigns" and as "beneficiary under this Security Instrument."

2

On November 17, 2010, MERS executed an "Assignment of Deed of Trust," thereby transferring to HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-8 all beneficial interest under plaintiffs' deed of trust. Plaintiffs allege that China Brown, an employee of America's Servicing Company, a division of Wells Fargo, fraudulently signed the assignment as part of a "robo-sign[ing]" process leading to the unlawful foreclosure of many properties, including that of plaintiffs.

On November 23, 2010, Default Resolution Network, as "Agent for the Beneficiary," recorded a notice of default informing plaintiffs that the total of their past-due payments was $56,241.30. Plaintiffs were instructed to contact Wells Fargo Home Mortgage to arrange for payment to stop the foreclosure or for any other reason. MERS is again identified as the beneficiary of the deed of trust.

The assignment of the deed of trust was recorded on November 29, 2010.

Plaintiffs allege that "Defendants oppressively deny and disregard Plaintiffs['] modification efforts despite the prevailing new California laws . . . whereby Defendants indicate that there are no options available when in fact, there are modification alternatives provided by law," and "Defendants unilaterally alter the terms of the subject loan by assessing exorbitant fees and charges falsely making it appear as part of the terms of the loan." Plaintiffs further allege "[t]hese misrepresentations were made by Defendants in order to induce reliance by Plaintiffs and Plaintiffs did rely on these representations and because of Plaintiffs' justified reliance the subject property has been foreclosed." Plaintiffs also allege that defendants did not comply with their statutory duty to work out some kind of a modification or other arrangement to save their home as embodied in Civil Code section 2923.5.

On February 15, 2011, "Wells Fargo Bank, NA, as Attorney in Fact for HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-8" substituted Fidelity

3

National Title Company (Fidelity) as the new trustee under plaintiffs' deed of trust. The substitution, however, was not recorded until July 26, 2011.

On March 4, 2011, "despite the modification efforts by Plaintiffs," Fidelity recorded a notice of trustee's sale of plaintiffs' home. On September 1, 2011, Fidelity, as trustee, recorded a trustee's deed upon sale. Fidelity granted all of its right, title, and interest to and in plaintiffs' home to HSBC, the grantee, for $505,000. The amount of the unpaid debt together with costs was $791,785.28. Plaintiffs allege: "Defendants in their attempt to unjustly and ultimately foreclose, Defendants take advantage of the insurance and credit enhancements such as excess interest reserves, or other insurance policies which were written to fraudulently claim as two-tiered asset."

The trial court sustained defendants' demurrer to all 12 causes of action in the first amended complaint without leave to amend. The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).) We must assume the truth of all properly pleaded facts as well as those that are judicially noticeable. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 (*Herrera*).) We are not concerned with plaintiffs' ability to prove the allegations or with any possible difficulties in making such proof. Our review is de novo. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264 (*Fontenot*).)

A judgment of dismissal was entered and plaintiffs appeal.

## DISCUSSION

## I

## Wrongful Foreclosure

Relying in part on media accounts, plaintiffs claim defendants wrongfully foreclosed on their property because the assignment of their trust deed had been "robo-signed," that is, signed by someone without knowledge of the contents of the document she signed. In plaintiffs' words, "There are limits to the maxim that what is alleged in a

4

Complaint must be deemed true for demurrer purposes. Here, however, with what's in the media from several credible sources this robo-signing was real. These robo-signers would sign hundreds of these documents a day, never even reading one word of what they were signing. A line has to be drawn by the Courts on this wrongful conduct, especially when the consequence is the foreclosure sale of a residence."

Plaintiffs insist that a robo-signed assignment is a void assignment, and a void assignment unravels the entire nonjudicial foreclosure. Although the robo-signing allegation has been launched in many cases, plaintiffs fail to cite any authority in which a court set aside a trustee's sale based on a robo-signed document. *Maynard*, *supra*, 2013 U.S.Dist. Lexis 130800 provides an apt example of a case in which the court rejected a very similar allegation.

Mr. Maynard asserted that an assignment was void because Kathleen Everson, the woman who signed it, did not hold the title she claimed on the document. (*Maynard*, *supra*, 2013 U.S.Dist. Lexis 130800 at pp. *22, *24.) He supported his allegation by attaching her LinkedIn.com profile and a Fiscal Times Financial Advisor profile, both of which identified her position with Wells Fargo as something other than the position named on the deed of trust she purportedly signed. (*Id*. at pp. *24-*25.) Maynard argued that utilization of the fabricated assignment constituted intentional misrepresentation and fraudulent concealment. (*Id*. at pp. *22-*28.) The court dismissed all causes of action predicated on the robo-signing allegation. (*Id*. at pp. *27-*28.)

The court explained, "Although Plaintiffs make a valiant effort to bolster their robo-signing allegations with Everson's LINKEDIN.com profile, Everson's profile from the Fiscal Times, and the National Mortgage Settlement Agreement, all miss the mark. Plaintiffs' allegations do not demonstrate that Everson was not authorized in her regular course of duties at Wells Fargo to execute Assignments of Deeds of Trust on behalf of Wells Fargo, nor do Plainitffs allege that Wells Fargo did not ratify Everson's conduct . . . . More importantly, however, Plaintiffs' robo-signing allegations fail

5

because Plaintiffs lack standing to challenge the alleged fraudulent transfers because they were not parties to the Assignment, nor were they the intended receipts [*sic*] of the Assignment. *See In re MERS Litigation, No. CV 10-1547-PHX-JAT, 2012 U.S. Dist. LEXIS 37134, 2012 WL 932625, at \*3 (D. Ariz. March 20, 2012)* (holding that allegations of robo-signing failed to state a claim because plaintiff lacked standing to challenge assignment). Countless courts have concurred in this result, finding that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer. [Citations.]

"Therefore, because Plaintiffs were not parties to the Assignment, do not contest that they are currently delinquent on the underlying debt obligation, and do not allege that they have been making payments towards this obligation (or to whom), the Court finds Plaintiffs could not have been injured by any alleged robo-signing. Moreover, to the extent that the Assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option." (*Maynard*, *supra*, 2013 U.S.Dist. Lexis 130800 at pp. \*25-\*27.)

Although the specific factual allegations in *Maynard* involved robo-signing, the court's holding is consistent with an emerging body of law rejecting plaintiffs' notion that plaintiffs who are in default on their loan payments can undo a nonjudicial foreclosure based on an irregularity in an assignment or notice of default. In *Gomes*, *supra*, 192 Cal.App.4th 1149, ReconTrust sent the borrower the notice of default. In *Gomes*, ReconTrust acted as the agent for MERS. " 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests

6

to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.]" (*Id*. at p. 1151.) The borrower alleged that he " 'does not know the identity of the Note's beneficial owner' " (*id*. at p. 1152) and that MERS did not have authority to initiate the foreclosure (*ibid*.). The trial court sustained a demurrer to the complaint without leave to amend. (*Id*. at p. 1159.)

Affirming, the Court of Appeal refused to interfere in the delicately balanced and comprehensive nonjudicial foreclosure scheme established by the Legislature. (Civ. Code, § 2924 et seq.) The court concluded, "Because California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the type of action identified by Gomes, there is no basis for the courts to create such a right." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1156.)

Similarly, the borrower in *Fontenot*, *supra*, 198 Cal.App.4th 256 complained that MERS lacked authority to transfer the note because the deed of trust designated MERS as both the "nominee for Lender" and the "beneficiary." (*Id*. at p. 262.) Like plaintiffs, the borrower failed to allege how she was prejudiced by MERS's purported assignment. The court found the deficiency fatal to the cause of action for wrongful foreclosure.

The court explained that "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note [citation], nor that the original lender would have

7

refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.)

The pattern continues. In *Herrera*, *supra*, 205 Cal.App.4th 1495, the borrower again alleged a defect in MERS's assignment of the deed of trust, arguing that the successors and assignees of the original lender did not have an agency agreement with MERS. And again the borrowers, like plaintiffs, did not claim that the lender committed misconduct by initiating foreclosure proceedings, nor did they contend they were not in default. "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Id*. at p. 1507.) Following the lead of the courts in *Gomes* and *Fontenot*, the *Herrera* court found no abuse of discretion in denying the plaintiffs' leave to amend.

The Fourth District Court of Appeal reiterated the same general rule in *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511: "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." Jenkins, like each of the distressed homeowners in all of these cases, alleged an improper transfer of the promissory note during the securitization process. But the court noted that Jenkins's obligations under the promissory note remained unchanged, even if the subsequent assignments were invalid. She lacked standing to challenge or enforce any of the agreements reached during the securitization process, including the investment trust's pooling and servicing agreement. In the court's view, there might have been a true

8

victim lurking, but it was not the borrower who had defaulted on her obligation and sought to create a controversy in which she was not a party. (*Id.* at p. 515.)

Here too, it is undisputed that plaintiffs are in default and they seek to undo a nonjudicial foreclosure sale based on alleged irregularities in the assignment of their deed of trust. Like their counterparts in the above cases, they allege the assignment of their deed of trust was fraudulent. They also allege the notice of default does not state who the beneficiary is, even though Default Resolution Network signed the notice as "Agent for the Beneficiary." They, too, contend they have stated sufficient facts to support a cause of action for wrongful disclosure.

A very recent case from the Fifth Appellate District is at odds with *Maynard*, *Gomes*, and the litany of cases cited above. In *Glaski*, *supra*, 218 Cal.App.4th 1079, the court held that the plaintiff stated a cause of action for wrongful foreclosure under the theory that the entity invoking the power of sale was not the holder of the deed of trust. The problem was an ill-fated glitch in the securitization of the loan and a violation of New York law. Simply put, the plaintiff's loan was not transferred into the securitized trust before it closed, and therefore the transfers were ineffective. (*Id.* at p. 1082.) The court wrote, "Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (*Id.* at p. 1083.)

*Glaski* has not been well received by other courts. "Every court in [the Northern D]istrict [of California] that has evaluated *Glaski* has found it is unpersuasive and not binding authority. *See Subramani v. Wells Fargo Bank N.A., No. C 13-1605, 2013 U.S. Dist. LEXIS 156556, 2013 WL 5913789, at *3 (N.D. Cal. Oct. 31, 2013)* (Judge Samuel Conti); *Dahnken v. Wells Fargo Bank, N.A., No. C 13-2838, 2013 U.S. Dist. LEXIS 160686, 2013 WL 5979356, at *2 (N.D. Cal. Nov. 8, 2013)* (Judge Phyllis J. Hamilton); *Maxwell v. Deutsche Bank Nat'l Trust Co., No. C 13-3957, 2013 U.S. Dist. LEXIS*

9

*164707, 2013 WL 6072109, at \*2 (N.D. Cal. Nov. 18, 2013)* (Judge William H. Orrick Jr.); *Apostol v. Citimortgage, Inc., No. C 13-1983, 2013 U.S. Dist. LEXIS 167308, 2013 WL 6140528, at 6 (N.D. Cal. Nov. 21, 2013)* (Judge William H. Orrick Jr.)." (*Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal., Dec. 10, 2013, No. C 13-04288) 2013 U.S.Dist. Lexis 173187 at \*5.)  Federal courts continue to reject the reasoning in *Glaski.*  (*Haddad v. Bank of America, N.A.* (S.D.Cal., Jan. 8, 2014, No. 12cv3010-WQH-JMA) 2014 U.S. Dist. Lexis 2205; *Rivac v. Ndex West LLC* (N.D.Cal., Dec. 17, 2013, No. C 13-1417 PJH) 2013 U.S. Dist. Lexis 177073; *Sepehry-Fard v. Dept. Stores Nat. Bank* (N.D.Cal., Dec. 13, 2013, No. 13-cv-03131-WHO) 2013 U.S. Dist. Lexis 175320.)  We can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding.

In *Dick v. American Home Mortgage Servicing, Inc.* (E.D.Cal., Sept. 18, 2013, Civ. No. 2:13-00201 WBS CKD) 2013 U.S.Dist. Lexis 133755 (*Dick*), the court did not attempt to distinguish or explain *Glaski* because it found the wrongful foreclosure claim failed for lack of prejudice.  The court explained, "California courts find a lack of prejudice when a borrower is in default and cannot show that the allegedly improper assignment interfered with the borrower's ability to pay or that the original lender would not have foreclosed under the circumstances.  See *Siliga v. Mortg. Elec. Registration Sys., Inc., 219 Cal. App. 4th 75, 161 Cal. Rptr. 3d 500, 2013 WL 4522474, at \*5 (Cal. Ct. App. 2d Dist. 2013)* ('The assignment of the deed of trust and the note did not change [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances.'); *Herrera v. Fed. Nat'l Mortg. Ass'n, 205 Cal. App. 4th 1495, 1508, 141 Cal. Rptr. 3d 326 (4th Dist. 2012)* (finding no prejudice from assignment of loan where borrowers defaulted on the loan and failed to tender and cure default); *Fontenot, 198 Cal. App. 4th at 27*2 (finding no prejudice where borrower was in default and did not allege that transfer of note interfered with borrower's ability to pay).

10

"Plaintiffs acknowledge they were in default of their loan. [Citation.] They do not allege that the allegedly improper transfer interfered with their ability to pay their note, or that the original lender would have refrained from foreclosure under the circumstances. The allegedly improper 'assignment merely substituted one creditor for another, without changing [plaintiffs'] obligations under the note.' *Fontenot*, 198 Cal. App 4th at 272. Plaintiffs do not allege they could have met these obligations, and thus any defects in the foreclosure were not prejudicial to plaintiffs. Accordingly, the court will grant the moving defendants' motion to dismiss plaintiffs' claim for wrongful foreclosure." (*Dick*, *supra*, 2013 U.S.Dist. Lexis 133755 at pp. *8-*9.)

We agree with defendants that plaintiffs' cause of action for wrongful foreclosure is akin to *Dick*, *Maynard*, *Gomes*, and the litany of cases cited above. They cite no authority to support their assertion that a party signing an assignment of a deed of trust must undertake any inquiry before signing it or that a notice of default must identify a beneficiary. More fundamentally, they do not contest that they are currently delinquent on the underlying debt. Thus, neither the alleged robo-signing nor the missing name of the beneficiary could have injured them. We agree with the growing number of courts that have foreclosed a borrower from setting aside a trustee's sale based on alleged irregularities in the securitization process they did not have standing to challenge and that did not ultimately prejudice them. As these cases clearly demonstrate, plaintiffs' wrongful foreclosure cause of action is without merit and was properly dismissed.

Under the rubric of their wrongful foreclosure cause of action, plaintiffs also assert that defendants violated the statutory duties imposed upon them in Civil Code section 2923.5. Section 2923.5, former subdivision (a)(2) provides, in part: "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section 2923.5, subdivision (b) further provides: "A notice of default filed pursuant to Section 2924 shall include a declaration that the

11

mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)."

Here the notice of default includes the following language in the last paragraph: "The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(c) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code § 2923.5"

Plaintiffs allege that "Defendants maliciously did not comply with such contact and due diligence requirements pursuant to Civil Code 2923.5 despite their recital in the Notice of Default[;] instead [Defendants] proceeded with the foreclosure on the property."

Assuming the truth of plaintiffs' allegations that, contrary to the declaration set forth in the notice of default, defendants did not "assess" and "explore," plaintiffs cannot prevail on their wrongful foreclosure cause of action. The only remedy for violation of Civil Code section 2923.5 is to postpone the foreclosure. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 223.) "The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure *prior* to a notice of default. It is enforced by the postponement of a foreclosure sale." (*Mabry*, at p. 225.) More to the point, "There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale. We would merely note that under the plain language of section 2923.5, read in conjunction with [Civil Code] section 2924g, the *only* remedy provided is a postponement of the sale before it happens." (*Mabry*, at p. 235.)

Plaintiffs' property has been sold. As a result, the remedy provided by Civil Code section 2923.5 has expired. Although the section was designed to encourage lenders to

12

work with borrowers to prevent foreclosure and, according to *Mabry*, borrowers have a private right to enforce the statute, they cannot utilize section 2923.5 to attack the validity of a trustee's sale after the property has been sold. Section 2923.5 cannot be used to resuscitate the moribund cause of action for wrongful disclosure.

The trial court properly sustained defendants' demurrer to the wrongful foreclosure cause of action. Plaintiffs make the rote assertion that if afforded the opportunity, they would provide more facts to coincide with the emerging jurisprudence. Unfortunately, that promise does not meet their burden of disclosing what new facts they can now state to revive their wrongful foreclosure claim. As a result, the trial court did not abuse its discretion by foreclosing additional amendments.

## II

### Fraud and Intentional Misrepresentation

Plaintiffs' second and third causes of action, entitled "Fraud" and "Intentional Misrepresentation," are a jumble of accusations and theories with few factual threads connecting them to the recent cases they seem to think breathe life into their complaint. While the cases they cite are sound, they are of no assistance in the absence of the requisite factual allegations. General and conclusory allegations are not sufficient to state a cause of action for fraud. "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." (*West*, *supra*, 214 Cal.App.4th at p. 793.)

Plaintiffs allege that defendants committed four fraudulent acts: 1) denying and disregarding their modification efforts and foreclosing prematurely; 2) China Brown's fraudulent signing; 3) unilaterally altering the terms of their loan by assessing exorbitant fees and falsely making charges appear as part of the loan; and 4) obfuscating and

13

misrepresenting the later steep monthly payment and interest rate increases after deceptively marketing risky loans with the primary purpose of selling them on the secondary market. We agree with defendants that these allegations, taken individually or cumulatively, do not constitute actionable fraud.

"The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." (*West*, *supra*, 214 Cal.App.4th at p. 792.)

Citing to the Fourth Appellate District's favorable view of the homeowner's fraud claim in *West*, *supra*, 214 Cal.App.4th 780, plaintiffs contend that defendants committed actionable fraud by disregarding their statutory duty to assist plaintiffs in securing a modification, denying their request for a modification, and by foreclosing prematurely. Their allegations do not satisfy the high bar set in *West*.

West alleged quite specifically that Chase Bank made misrepresentations in the trial plan agreement and in a letter dated April 5, 2010, both of which were attached as exhibits to the complaint. (*West*, *supra*, 214 Cal.App.4th at p. 793.) In the April 5 letter, the Bank notified West she had not been approved for a permanent modification but invited her to request the data upon which the denial was based, and if she found any material inaccuracies, the Bank promised to conduct a new evaluation. (*Id*. at p. 789.) She also alleged that on April 8, 2010, she spoke to a supervisor in the loan modification department, informed the Bank it had used outdated information, and requested a reevaluation. (*Id*. at pp. 793-794.) In a conference call on May 24, 2010, the bank agreed she could resubmit her updated financial data for reevaluation, and " 'there was no foreclosure sale date or sale scheduled.' " (*Id*. at p. 790.) Two days later the bank secretly sold her house. (*Ibid*.)

14

The Fourth Appellate District concluded that West met the specificity requirement for stating a viable cause of action for fraud, demonstrated justifiable reliance, and adequately pleaded that her reliance on the alleged misrepresentations caused her to suffer damages. (*West*, *supra*, 214 Cal.App.4th at pp. 793-795.) By contrast, plaintiffs' complaint falls woefully short.

Plaintiffs do not allege they negotiated a modification as in *West* or that defendants assured them foreclosure proceedings would be suspended while a modification was pursued. To the contrary, the heart of the fraud claim is that defendants did not do anything at all to facilitate a modification. Their failure to act under these circumstances does not constitute fraud. Rather, plaintiffs' vague and conclusory allegations amount to little more than a "could have, would have, should have" accusation that defendants were engaged in some kind of fraudulent behavior by telling them they could not modify their loan. Plaintiffs ignore, however, the hard fact that lenders are not compelled to determine a borrower's ability to repay a loan, nor must they modify a loan, even if the homeowner is facing foreclosure. (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 436.)

Assuming for purposes of demurrer that plaintiffs were given false information about future interest rate increases, they fail to plead the alleged fraud with the requisite specificity. Defendants do not include the originating lender, Provident, who presumably would be liable for any misrepresentations made at the time the loan agreement was executed. The trial court catalogued the pleading deficiencies: "There are no specific allegations of fact in the First Amended Complaint stating how, when, where, to whom, and by what means the representations were tendered and the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. Plaintiffs having had two opportunities to adequately allege fraud by intentional misrepresentations and having failed to advise the court how the defects could be remedied by amendment, the demurrer

15

to the fraud by intentional misrepresentations cause of action is sustained without leave to amend."

We also point out that plaintiffs have failed to adequately plead facts in support of their generic allegations of justifiable reliance and damages. As we discussed in relation to their cause of action for wrongful foreclosure, it is their default, and not defendants' conduct, that resulted in the loss of their home. Lenders are not financial advisors. As the trial court aptly admonished plaintiffs, "A lender pursues its own economic interests in lending money, owes no duty of care to the borrowers in approving their loan, and is under no duty to determine the borrower's ability to repay the loan. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's. The borrowers rely on their own judgment and risk assessment in deciding whether to accept the loan."

Plaintiffs' so-called cause of action for "Intentional Misrepresentation," though a misnomer, fares no better. Plainitffs challenge the trial court's notion that lenders owe no duty of care to borrowers, citing *Jolley*, *supra*, 213 Cal.App.4th 872. *Jolley* is an odd choice of authority to support a claim of intentional misrepresentation because the relaxation of the duty analysis was pertinent only to the plaintiff's negligence claim. Nevertheless, even if we ignore the cause of action, the *Jolley* facts bear no resemblance to the ones before us.

Procedurally, *Jolley* involved a summary judgment, and substantively, the case involved a construction loan. (*Jolley*, *supra*, 213 Cal.App.4th at p. 878.) The facts were egregious. Washington Mutual Bank (WaMu), before being subsumed by JPMorgan Chase (Chase), lost the loan documents, which held up construction financing; made false representations about the amount of reimbursements; did not deliver on disbursements as promised; and delayed construction. (*Id*. at p. 878.) The borrower's distress was then exacerbated by Chase, who had been informed " 'in great detail' " about all the problems with the loan with WaMu. (*Id*. at p. 880.) Chase reassured the borrower there was a high

16

probability he could modify the loan to avoid foreclosure, and in reliance on Chase's representations, the borrower testified he was induced to borrow heavily to finish the construction project. (*Id*. at p. 881.) Two days before Chase foreclosed, the borrower filed the underlying lawsuit. (*Ibid*.)

It is true that on these facts the court reconsidered what had become boilerplate language limiting lenders' duty of care to borrowers. The court reiterated that " 'as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.' [Citations.]" (*Jolley*, *supra*, 213 Cal.App.4th at p. 898.) Nevertheless, the "foreclosure epidemic" requires a more nuanced application of the historical truism that a lender is entitled to pursue its own economic interest in dealing with a borrower. (*Id*. at p. 902.) "We live, however, in a world dramatically rocked in the past few years by lending practices perhaps too much colored by shortsighted self-interest. We have experienced not only an alarming surge in the number of bank failures, but the collapse of the housing market, an avalanche of foreclosures, and related costs borne by all of society. There is, to be sure, blame enough to go around. And banks are hardly to be excluded." (*Ibid*., fns. omitted.)

Interestingly, the court utilized California's newly enacted "Homeowner Bill of Rights" (Assem. Bill No. 278; Sen. Bill No. 900 (2011-2012 Reg. Sess.), as well as legislation requiring lenders to negotiate with borrowers in default to seek loss mitigation solutions (Civ. Code, § 2923.5, 2923.6), to buttress its more flexible consideration of a lender's duty toward a borrower. (*Jolley*, *supra*, 213 Cal.App.4th at p. 903.) "In short, these measures indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of care to their borrowers." (*Ibid*.) The court reversed the summary adjudication of the borrower's negligence claim, finding triable issues of fact underlying the duty issue. (*Id*. at p. 906.)

17

We have no reason to disagree with *Jolley*'s observations about the foreclosure epidemic.  And we accept plaintiffs' premise that both the California Legislature and the California state and federal courts have shown increasing sympathy for the plight of borrowers who either face foreclosure or who have lost their homes.  But as appellate judges our sole task is to measure the sufficiency of the pleadings against the then applicable legal parameters.  So while *Jolley* provides an enlightening discussion of recent ameliorative efforts to stem the tide of foreclosures, it cannot and does not cure the factual deficiencies in plaintiffs' complaint.

Beyond the reference to *Jolley*'s duty analysis, we cannot decipher what the intentional misrepresentation cause of action is about and how it differs from the second cause of action for fraud.  Plaintiffs' allegations bear no resemblance to the facts alleged in *Jolley* as they do not claim, as did Mr. Jolley, that defendants promised them a modification while simultaneously pursuing a foreclosure (also known as "double tracking").  Indeed, the problem with their pleadings is that they do not describe, as Mr. Jolley did in graphic detail, the conduct they find so deplorable, other than the undeniable fact that they assumed a loan they could not afford.  Unfortunately for plaintiffs, the first amended complaint does not outline representations or a course of conduct that constitutes actionable fraud or, if there is a difference, intentional misrepresentation.

## III

### Breach of Contract and
### Breach of the Implied Covenant of Good Faith

In their opening brief, plaintiffs direct us to two paragraphs in their first amended complaint that, in their view, encapsulate their breach of contract theory and expose how

the court erred by dismissing the fourth and fifth causes of action.[1]  First, they allege: "Upon information and belief Defendants engage in securitization of the subject loan as shown by the alleged representation of HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass Through Certificates, Series 2007-8, without proper disclosure to Plaintiffs, whereupon they transfer loans to trust entity(ies) with pooling and servicing agreements."

They also allege:  "Defendants oppressively deny and disregard Plaintiff[s'] modification efforts despite prevailing new California laws as mentioned herein, whereby Defendants indicate that there are no options available, when in fact, there are various modification programs and alternatives provided by law and supported by government programs, among others."  Of course, plaintiffs also incorporate all the other allegations set forth in the first amended complaint.

The trial court was unimpressed and outlined the deficiencies.  "The allegations of the breach of contract cause of action fails to adequately allege the breach of the deed of trust agreement by alleging what terms were materially altered, what fees were charged, what contract term prohibited the fees, and etc.  In addition, there are no allegations of fact that Plaintiffs fully performed the agreement by payment of the monthly loan payments, or an excuse for non-payment.  Plaintiffs also fail to identify the term of the

---

[1] Defendants point out that although the judgment of dismissal provides that judgment be entered in favor of defendants on all claims asserted in the first amended complaint, the conclusion of the tentative ruling sustained defendants' demurrers to the first through third and the fifth through twelfth causes of action without leave to amend.  Thus, that part of the tentative ruling did not address the fourth cause of action for breach of contract.  In its discussion in the body of the ruling, however, the court found that the allegations set forth in the fourth cause of action were insufficient to state a breach of contract claim.  We agree with defendants that either the trial court mistakenly dropped the fourth cause of action or believed that it did not apply to defendants.  Plaintiffs appeal the judgment of dismissal of all claims, and therefore, we will review the sufficiency of the breach of contract cause of action against these defendants.

19

deed of trust that mandated disclosure of securitization of the loan and transfer of the loan. The court is unable to identify such provisions in the terms of the alleged contract – the deed of trust."

Yet again plaintiffs assure us they "will be able to allege further facts related to their previous efforts to obtain a loan modification. If these facts involve a trial period plan, then arguably a stronger argument may be made for a breach of contract cause of action." They insist that the new legislation and the new cases provide a basis for reversing the trial court and giving them yet another opportunity to amend their contract causes of action. They are terribly mistaken.

If plaintiffs have those facts we are at a loss as to why they continue to hide them. It is a little late in the game to assert "If these facts involve a trial period plan . . ." as if they do not know if there is a trial period plan or not. As we have indicated above, plaintiffs have repeatedly failed to sustain their burden of setting forth their factual allegations so that we may evaluate the viability of their claims. In the absence of those facts, they are not entitled to another needless opportunity to amend.

The trial court properly sustained demurrers to both contract-based causes of action. The court thoroughly outlined how plaintiffs failed to allege each of the elements of a viable cause of action for breach of contract. Nor do their citations to *West*, *Jolley*, or the California Homeowner Bill of Rights resurrect their claims.

It is true that in both *West* and *Jolley* the plaintiffs were able to proceed on contract theories of liability. But in both cases the pleadings filled in all the gaps missing in plaintiffs' first amended complaint. In *West*, the plaintiffs made temporary payments under the federally sponsored HAMP (Home Affordable Mortgage Program), and the court found that federal regulations required the bank to offer a permanent modification if the borrower complied with the terms of the temporary plan. (*West*, *supra*, 214 Cal.App.4th at pp. 796-797.) In *Jolley*, the facts gave rise to a breach of contract/promissory estoppel theory based on the lender's promise to modify the loan.

20

(*Jolley*, *supra*, 213 Cal.App.4th at pp. 896-897.) Plaintiffs do not allege they entered into any kind of modification agreement, nor do they allege the lender promised to do so. Neither case is pertinent to their contract claims.

Nor is the California Homeowner Bill of Rights of assistance to plaintiffs in this case. The legislation became effective January 1, 2013, long after the conduct alleged here. The fatal flaw in plaintiffs' case is not the law, but the failure to allege sufficient facts to state any contract-related cause of action.

## IV

## Slander of Title and Quiet Title

Almost lost amidst a full dozen causes of action alleging every conceivable legal theory to reclaim their house is the key fact that plaintiffs were in default and they have not tendered payment of their debt. Nevertheless, they accuse defendants of slandering their title by publishing an "invalid" notice of default that disparaged the title to their property and precluded them from selling their house. They contend they are excused from tendering full payment of the loan and are entitled to quiet title to the property. Neither argument has merit.

The trial court reported that plaintiffs conceded the slander of title cause of action was fatally defective and had failed to advise the court how it could be amended to remedy the defects. They remain mute on appeal. It is their burden to demonstrate how they can amend the complaint, a burden they have failed to meet. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

Nor do we accept the premise of plaintiffs' argument—that the notice of default constituted a publication of a false statement. Plaintiffs do not contest that they were, in fact, in default. Any irregularities in the publication of the notice of default do not render the notice false. Thus, the premise of their legal theory is misguided and the cause of action was properly dismissed.

21

Nor can plaintiffs state a cause of action for quiet title. "[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured." (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649.) The federal court put the deficiency in the plaintiff's allegations succinctly in *Kelley v. Mortgage Electronic Registration Systems, Inc.* (N.D.Cal 2009) 642 F.Supp.2d 1048, 1057: "Plaintiffs have not alleged that they are the rightful owners of the property, i.e. that they have satisfied their obligations under the Deed of Trust. As such, they have not stated a claim to quiet title."

Plaintiffs maintain that a full tender can be excused. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113.) Plaintiffs, without explanation, contend that two exceptions to the tender rule apply here: they are attacking the validity of the underlying debt, and the deed of trust is void on its face. Plaintiffs must explain the basis upon which they have purportedly attacked the validity of the underlying debt, a fatal gap they continue to fail to rectify. We concur with the trial court's evaluation of the second exception. "As stated earlier in this ruling, the state of the recorded nonjudicial foreclosure documents, which the court may and does take judicial notice of, establishes that the foreclosure sale was not void and, therefore, the trustee's deed upon sale is not void on its face. Therefore, that exception to the tender requirement does not apply on the face of the First Amended Complaint and matters of which the court takes judicial notice of [*sic*]." The trial court properly sustained the demurrer to the quiet title action and, given plaintiffs' failure to demonstrate how a viable cause of action might be stated, properly denied plaintiffs the opportunity to amend again.

V

**Declaratory Relief and Accounting**

In their opposition to the demurrers, plaintiffs conceded their claims for declaratory relief and an accounting have "still not been properly plead." And yet even on appeal, they "still" fail to offer a sufficient amendment or, for that matter, any amendment at all. On their face, both equitable causes of action are deficient. Since the

22

property has been sold, there remain no prospective claims appropriate for declaratory relief.  And given the magnitude of plaintiffs' underlying debt, there is no viable claim that defendants owe anything to plaintiffs.  Based on plaintiffs' failure to offer an amendment, neither of these causes of action is viable.

**VI**

**Unfair Business Practices**

The unfair competition law (UCL) prohibits " 'any unlawful, unfair or fraudulent business act or practice.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; see Bus. & Prof. Code, §§ 17200-17210.) Unfair competition claims must be broadly construed to give courts the discretion to thwart ever more clever and shrewd schemes to defraud.  And we certainly recognize that unfair competition can be established by showing a violation of any state, federal, or local law. (*Cel-Tech*, at pp. 180-181.)  But despite the breadth of the statute, a plaintiff must "state with reasonable particularity the facts supporting the statutory elements of the violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.)  For all the reasons plaintiffs' many other claims fail, including the recurring theme that their allegations are vague and conclusory, plaintiffs fail to allege a viable cause of action for unfair competition.

Plaintiffs allege that defendants assessed them excessive fees; mischaracterized and/or misapplied their payments; failed to disclose the costs, fees, and charges associated with their loan; and failed to provide adequate information to them on a monthly basis.  They also allege "the foreclosing Defendants engage in a uniform pattern and practice of unfair and overly aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and execute premature foreclosure proceedings."  They further allege that defendants' scheme is designed to defraud and cause substantial harm to California consumers and that plaintiffs, as

23

California consumers, have "suffered and will continue to suffer damages in the form of unfair, unwarranted and improper fees and charges."

As we have explained at some length, none of the activity alleged in the preceding causes of action is sufficient to survive demurrer, and therefore those alleged misdeeds provide no predicate upon which to base a UCL claim. Where, as here, a UCL claim is predicated on facts supporting other claims asserted by a plaintiff, and all of the other claims have been dismissed, it is appropriate to also dismiss the underlying UCL claim. (*Keen v. American Home Mortgage Servicing, Inc.* (E.D.Cal. 2009) 664 F.Supp.2d 1086, 1102.)

A plaintiff has standing to bring a private action under the UCL only if he or she can demonstrate injury in fact and a loss of money or property as a result of the unfair competition. (Bus. & Prof. Code, § 17204.) The trial court found plaintiffs' allegations insufficient to demonstrate standing. "Plaintiffs merely allege Defendants engaged in certain conduct resulting in assessment of unwarranted and unfair fees against 'California consumers'; the scheme was designed to defraud and substantially harm 'California consumers'; and 'as California consumers' Plaintiffs suffered and will continue to suffer damages of unfair, unwarranted and improper fees and charges. [Citation.] That allegation is insufficient to allege defendants [*sic*] as individuals lost money or property. Plaintiffs essentially allege that a class of California consumers lost money and/or property and Plaintiffs are 'California consumers'."

To the extent plaintiffs assert vague and conclusory damages as a member of a class of consumers, their UCL claim fails. Perhaps they might have succeeded in surviving the demurrer had they alleged their personal damages. As it is, they allege the fair market value of the property was approximately $485,000 and the purported principal balance of their loan was $760,000. The amount of the unpaid debt together with costs listed on the trustee's deed upon sale was $791,785.28 and the amount paid by the grantee at the trustee sale was $505,000. Even if we were to assume the truth of

24

plaintiffs' allegations, to the extent they represent figures different than those in the trustee's deed upon sale, they fail to allege a requisite loss to sustain their UCL claim because defendants sustained such an enormous loss and plaintiffs are not liable for the deficiency.

It is true that plaintiffs allege conduct under the auspices of their UCL claim very different from the conduct supporting their many other causes of action, including the assessment of many unfair or improper fees and charges. But they fail to allege their individual damages separate from the general class of California consumer. Their general allegations of damages arising from the panoply of wrongful foreclosure causes of action do not meet their burden, even at the pleading stage, of alleging the damages they suffered as a result of the purported unfair practices. In the absence of an adequate allegation of damages, the trial court properly sustained the demurrer to the UCL cause of action.

## VII

## Unjust Enrichment and Injunctive Relief

The trial court's analysis of plaintiffs' allegations that defendants have been unjustly enriched is nearly identical to our own discussion of the inadequacy of plaintiffs' pleading of damages arising from their UCL claim. The court explained: "The First Amended Complaint alleges: Plaintiffs received a loan in the amount of $696,000; the present fair market value of the subject property is $485,000 and the purported principal balance is approximately $760,000; and the foreclosing Defendants were unjustly enriched at the expense of Plaintiffs. [Citations.] The court takes judicial notice that HSBC Bank obtained title to the property at the trustee's sale for $505,000. [Citation.] The allegation of unjust enrichment is merely a legal conclusion without any support from the allegations of fact contained in the First Amended Complaint. Plaintiffs admit that they received a loan of $696,000 from the lender and, in return, Defendants received the right to sell property worth $485,000 after Plaintiffs were unable to make payments.

25

Whether written off or not, there was an actual loss to Defendants readily apparent from the face of the First Amended Complaint. The allegation of unjust enrichment is at odds with the admitted facts in the pleading." We could not say it any better. It would be futile to allow yet another attempt to allege an illusive theory of unjust enrichment.

Finally, plaintiffs sought to enjoin the sale, which is now a fait accompli. For good reason, they do not argue the issue in their opening brief. The issue is now moot and the demurrer was properly sustained.

## DISPOSITION

The judgment of dismissal of all causes of action is affirmed.

RAYE , P. J.

We concur:

BLEASE , J.

HULL , J.

26