Filed 7/29/15  Flannigan v. Onuldo, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KAROLYN FLANNIGAN, | D067447 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1304784) |
| ONULDO, INC. et al., | |
| Defendants and Respondents. | |


APPEAL from judgments of the Superior Court of Riverside County, Edward D. Webster and Richard J. Oberholzer,* Judges.  Affirmed.


Law Offices of Anthony N. Ehiemenonye and Anthony N. Ehiemenonye for Plaintiff and Appellant.

Law Offices of Mary Jean Pedneau, Mary Jean Pedneau, William R. Larr and Susan S. Vignale for Defendants and Respondents Juan Moreno and Guillermina Moreno.

---

*        Retired judge of the Kern Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

AlvaradoSmith, John M. Sorich, S. Christopher Yoo and Thomas S. Van for Defendants and Respondents JPMorgan Chase Bank, N.A., for itself and as successor by merger to Chase Home Finance, LLC, California Reconveyance Company, Mortgage Electronic Registration Systems, Inc., and US Bank National Association, as trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMCS, Asset Backed Pass-Through Certificates, Series 2006-WMC2.

In this case, a defaulting homeowner who has failed to tender loan payments seeks to set aside a nonjudicial foreclosure sale. Plaintiff and appellant Karolyn Flannigan (plaintiff) in her third amended verified complaint (TAC) alleged, inter alia, that the assignments of a deed of trust securing the real property and the substitution of a trustee were void and that numerous statutory requirements pertaining to the foreclosure were violated. Plaintiff sought rescission of the foreclosure sale, damages, and other relief.

As relevant in this appeal, defendants and respondents (i) Onuldo, Inc., (Onuldo) the bona fide purchaser of the real property at foreclosure; (ii) Juan Moreno and Guillermina Moreno (collectively the Morenos), the homeowners who subsequently purchased the real property from Onuldo after the court granted Onuldo's motion to quash the lis pendens plaintiff recorded on said property; and (iii) various other entities involved in the assignment of the deed of trust securing the loan, including JPMorgan Chase Bank, N.A., for itself and as successor by merger to Chase Home Finance, LLC (collectively Chase), California Reconveyance Company (CRC), Mortgage Electronic Registration Systems, Inc. (MERS)[1] and US Bank National Association, as trustee for

---

[1] " 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in

J.P. Morgan Mortgage Acquisition Trust 2006-WMCS, Asset Backed Pass-Through

Certificates, Series 2006-WMC2 (sometimes collectively defendant entities), separately

demurred. The court sustained all the demurrers without leave to amend. We affirm.

FACTUAL BACKGROUND

Our statement of facts takes as true "the properly pleaded factual allegations, facts

that reasonably can be inferred from those expressly pleaded, and matters of which

judicial notice has been taken" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007)

148 Cal.App.4th 97, 111) but ignores "deductions or conclusions of law" in the complaint

(*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967).[2]

Plaintiff in July 2005 purchased a home located in Moreno Valley, California

(subject property). Plaintiff in March 2006 refinanced the loan on the subject property

mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.] 'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1151 (*Gomes*).) In other words, the promissory notes "may . . . be transferred among members without requiring recordation in the public records." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*).) Plaintiff here contends MERS was a suspended corporation in November 2004. However, the exhibit to plaintiff's TAC allegedly showing this suspension is for a similarly named, but altogether *different*, entity: "Mortgage Electronic Registration System, Inc." (*not* "System**s**, Inc.," which is MERS).

[2]     Plaintiff's TAC included almost 160 pages of exhibits that were incorporated by reference. We note that each of the defendants' demurrers also included a substantial number of documents that were judicially noticed by the court.

3

through WMC Mortgage Corp. (WMC). The refinanced loan was in the amount of $382,500 (loan) and was secured by a deed of trust (DOT). In addition to identifying WMC as the lender, the DOT identified Westwood Associates as the trustee, MERS, acting as nominee for the lender and as the beneficiary, and plaintiff as the trustor. The record shows the DOT was recorded in early April 2006 with the Riverside County Recorder's Office,[3] instrument No. 2006-0237528.

Plaintiff defaulted on the loan. As a result, on January 24, 2007, a notice of default and election to sell was recorded, instrument No. 2007-0054476. This notice of default indicated plaintiff was then in arrears in the amount of about $12,333.

An assignment of the DOT was recorded on March 16, 2007, instrument No. 2007-0182703. This assignment references "US Bank, National Association" as the assignee. As discussed *post*, this assignment should have stated the entire trust name of the securitized trust, as described in the September 27, 2012 corrective corporate assignment of deed of trust.

In any event, on October 22, 2007, a substitution of trustee was recorded, instrument No. 2007-0649482. Chase, as attorney-in-fact for US Bank, National Association, substituted First American Loanstar Trustee Services for Westwood Associates.

When the default was not cured, a notice of trustee's sale was recorded, instrument No. 2007-0659136. This notice provided the total unpaid balance was about $438,756. On May 23, 2008, a trustee's deed upon sale was recorded, instrument No. 2008-

---

[3] The record shows all documents involving the subject property were in fact recorded in the Riverside County Recorder's Office.

4

0280457. However, on June 11, 2008, a notice of rescission of the trustee's sale and the trustee's deed upon sale was recorded, instrument No. 2008-0318775, as a result of the parties' attempts to modify the loan so that plaintiff could retain the subject property.

Plaintiff again defaulted on the loan. As a result, a second notice of trustee's sale was recorded on November 10, 2008, instrument No. 2008-0595023. This notice provided the total unpaid balance due and owing on the loan was about $466,951. However, a notice of rescission of declaration of default and demand for sale was recorded on January 9, 2009, instrument No. 2009-0010254. Less than a week later, a second notice of default was recorded, instrument No. 2009-0019529, after the parties were again unable to reach any agreement to modify the loan. This notice of default provided that the amount in arrears was about $68,000 and that plaintiff was in breach of the obligations secured by the DOT because the installment of principal and interest due on "01/01/2007 and all subsequent installments, together with late charges," had not been made.

On April 16, 2009, a notice of trustee's sale was again recorded, instrument No. 2009-0186248. The notice set the sale for May 6, 2009.

With the foreclosure completed, a trustee's deed upon sale was recorded on May 12, 2009, instrument No. 2009-0236841. However, once again a notice of rescission of the trustee's sale and of the trustee's deed upon sale was recorded, this time on May 20, 2009, instrument No. 2009-0253661. This notice of rescission provided in part:

"2. On January 15 2009, [the trustee] LOANSTAR commenced a foreclosure proceeding against the Property pursuant to the power of the sale contained in the Security Instrument by recording a Notice of Default and Election to Sell Under Deed of

Trust as instrument No. 2009-0019529 in the office of RIVERSIDE County Recorder. More than three months later, on April 16, 2009, LOANSTAR recorded a Notice of Trustee's Sale as Instrument No. 2009-0186248 . . . stating its intent to sell the Property at public auction on May 06, 2009. On that date, LOANSTAR sold the Property to U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2 for the total sum of $116,010.68. A Trustee's Deed Upon Sale was thereafter issued in favor of U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2 and was recorded on May 12, 2009 as Instrument No. 2009-0236841 . . . .

"3.     Before the sale was held, the current beneficiary approved the Trustors for a legally binding and enforceable agreement to modify the repayment terms of the loan and to thereby reinstate the default upon which the foreclosure proceeding was based, thereby divesting the power of sale pursuant to which LOANSTAR was purportedly acting when the Trustee's Sale was purportedly held and the Trustee's Deed Upon Sale was issued. Accordingly, the Trustee's Sale and the resulting Trustee's Deed Upon Sale were and are null, void and legally ineffective to transfer all or any interest in the Property . . . .

"NOW THEREFORE, by the recordation of this Notice of Rescission of Trustee's Sale and Trustee's Deed Upon Sale, the undersigned, as duly substituted trustee under the aforesaid deed of trust, does hereby rescind that certain Trustee's Deed Upon Sale recorded on May 12, 2009 . . . as though said instrument had never been executed . . . and the purported Trustee's Sale . . . had never been held."

6

On October 25, 2010, a notice of rescission of the declaration of default was recorded, instrument No. 2010-0509215. The October 25 notice of rescission in part provided the beneficiary rescinded the default and demand for sale, but that it was understood "that this rescission shall not in any manner be construed as waiving or affecting any breach, or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice . . . ."

A corporate assignment of deed of trust was recorded on March 7, 2012, instrument No. 2012-0106142. This assignment identified US Bank National Association, as trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2, as the assigned beneficiary.

On July 20, 2012, a second substitution of trustee was recorded, instrument No. 2012-0340020. This document substituted CRC (i.e., California Reconveyance Company) as the trustee under the DOT. Also on July 20, 2012, a third notice of default was recorded, instrument No. 2012-0340024. This notice of default provided plaintiff was in arrears on the loan in the amount of about $224,692. This notice further provided that upon request, the beneficiary would provide a written itemization of the entire amount owed and that the beneficiary and homeowner could agree in writing for "additional time in which to cure the default" or otherwise "establish a schedule of payments" to cure such default.

The record shows on September 27, 2012, CRC as trustee recorded a notice of rescission of declaration of default and demand for sale, instrument No. 2012-0461444.

7

Also on September 27, a corporate assignment of deed of trust was recorded, instrument No. 2012-0461445. As note *ante*, this assignment provided it was being "recorded to correct the Assignee from the Corporate Assignment of Deed of Trust recorded on March 16, 2007 with instrument number 2007-0182703."

CRC on September 27 also recorded a notice of default, the fourth, instrument No. 2012-0461446. This notice of default provided plaintiff was in arrears under the loan in the amount of about $167,279. CRC on December 28, 2012 recorded a notice of trustee's sale, the fourth, instrument No. 2012-0633708. This notice of trustee's sale provided the sale of the real property would take place on January 18, 2013.

On February 27, 2013, a trustee's deed upon sale was recorded, instrument No. 2013-0097392. This trustee's deed upon sale provided the subject real property was sold at public auction on February 20, 2013, with the grantee Onuldo being the highest bidder. Onuldo in April 2013 initiated an unlawful detainer action against plaintiff. Judgment for possession only was awarded in favor of Onuldo. Thereafter, Onuldo successfully moved to expunge the lis pendens plaintiff had recorded on the subject property and sold the subject real property to the Morenos.

PROCEDURAL BACKGROUND

As noted, defendants separately demurred to plaintiff's TAC, which at its core alleged the DOT securing the refinanced loan was wrongfully foreclosed.

Of the 11 causes of action asserted in the TAC,[4] the Morenos were only named as

---

4    The record shows the TAC's caption page lists 12 causes of action, but the TAC itself only alleges 11 causes of action.

8

defendants in the first cause of action for quiet title. The Morenos in their demurrer contended the TAC failed as a matter of law to state a quiet title action because among other reasons the court previously had found that Onuldo was a bona fide purchaser of the subject real property and thus acquired valid title to said property. In connection with their demurrer and supporting papers, the Morenos requested the court judicially notice the court's June 17, 2013 order granting Onuldo's motion to expunge the lis pendens recorded by plaintiff.

With respect to Onuldo, its demurrer alleged it was named only in the first, fourth, sixth, seventh and tenth causes of action for quiet title, fraudulent assignments and conveyances, the setting aside of trustee's sale and trustee's deed upon sale, wrongful institution of unlawful detainer action and disgorgement, respectively.[5] Onuldo in its demurrer further alleged that its "sole relationship" to the subject property was that Onuldo was a bona fide purchaser for value after it acquired said property at a trustee's sale conducted pursuant to a power of sale in the DOT, as the trial court found in its June 17 order expunging the lis pendens. Onuldo also alleged that plaintiff did not, nor could she, allege that she ever tendered payment of the sums sufficient to reinstate the underlying note secured by the DOT and that plaintiff sought to evade the requirement she do so by contending the trustee's sale was void.

---

[5] Although Onuldo contended only these causes of action were asserted against it in the TAC, we note this defendant was also named in the ninth cause of action for breach of the implied covenant of good faith and fair dealing and in the eleventh cause of action for slander of title. Nonetheless, the record shows the court sustained the demurrer of Onuldo with respect to *all* causes of action. We note that Onuldo has not filed any briefing in this appeal.

9

Finally, with respect to the defendant entities, they demurred to all causes of action (except the seventh for wrongful institution of the unlawful detainer action, which was asserted against the Morenos and Onuldo).[6]  In support of their demurrer, these defendants alleged among other things that Civil Code section 2924 applied; that as a matter of law plaintiff's challenge to the authority of said defendants to commence and conduct nonjudicial foreclosure proceedings lacked merit; and that plaintiff in any event as a matter of law lacked standing to challenge the authorization to proceed with foreclosure.

On November 26, 2013 the court sustained Onuldo's demurrer to the TAC without leave to amend.  On December 20, 2013, the court also sustained without leave to amend the demurrers of the Morenos and the defendant entities.  Judgments were subsequently entered and this appeal ensued.

DISCUSSION

A. *Threshold Contentions*

Before reaching the merits of this appeal, we address the contention of plaintiff that this court should not consider the brief filed by the defendant entities because it allegedly was late.

Our docket shows the defendant entities were granted an extension to August 25, 2014 to file their respondents' brief.  Our docket further shows the defendant entities' brief was filed three days later, on August 28, 2014.  However, the defendant entities

---

[6]    The second, third, fifth, eighth, ninth and eleventh causes of action set forth in the TAC alleged causes of action for rescinding the DOT based on fraud, voiding all contracts, wrongful foreclosure, negligent accounting, breach of the implied covenant of good faith and fair dealing and slander of title, respectively.

10

were entitled to notice of their failure to file, followed by an automatic 15-day extension of time. (See Cal. Rules of Court, rule 8.220(a).) Our docket shows at the time defendant entities filed their respondents' brief, no such notice had been issued. Thus, clearly defendant entities' brief was timely.

Plaintiff next contends the trial court erred in taking off calendar plaintiff's motions to deem requests for admissions (RFA's) admitted because, although certain defendants "timely" provided responses to the RFA's, the verifications accompanying said responses said a verification would "follow." We find this contention unavailing.

The record shows plaintiff on October 16, 2013 served RFA's on defendants CRC, MERS, Chase and US Bank National Association. The record shows each of these defendants responded to the RFA's, but that in so doing, they each included a statement that a verification would follow. The record also shows plaintiff on December 20, 2013, ostensibly *after* the trial court sustained without leave to amend the demurrer of these defendants, filed her motions to deem such RFA's admitted.

We are not unaware of the general rule that to the extent responses to RFA's are unverified, such responses are "tantamount to no response at all." (See, e.g., *Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636.) However, this rule also must be read in light of another rule: in the event timely RFA responses are not served, or as in this case, are served but are *initially* unverified, a trial court is required to grant the propounding party's deemed admitted motion "unless it finds that the party to whom the requests for admission have been directed has served, *before the hearing on the motion,* a

11

proposed response to the requests for admission that is in substantial compliance with Section 2033.220."[7]  (Code Civ. Proc., § 2033.280, subd. (c), italics added.)

Here, the record shows the hearing on the motions to deem the RFA's admitted was set for February 10, 2014.  However, once the trial court sustained the demurrer of these four defendants without leave to amend, there would have been no reason for these defendants to verify their responses to the RFA's, inasmuch as the court found plaintiff's TAC on its face failed as a matter of law to state any valid cause of action.

What's more, if the court had overruled the demurrer of these defendants or sustained it with leave to amend, then clearly the defendants per Code of Civil Procedure section 2033.280, subdivision (c) had until the hearing date, February 10, 2014, to provide a verification to accompany their earlier responses.

Moreover, we note that once the court entered judgment on January 27, 2014 in favor of these defendants based on the order sustaining without leave to amend their demurrer, the court was deprived of jurisdiction to entertain plaintiff's motions to deem the RFA's admitted.  (See *Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1237

---

[7]    Section 2033.220 of the Code of Civil Procedure provides: "(a) Each answer in a response to requests for admission shall be as complete and straightforward as the information reasonably available to the responding party permits. [¶] (b) Each answer shall: [¶] (1) Admit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party. [¶] (2) Deny so much of the matter involved in the request as is untrue. [¶] (3) Specify so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge. [¶] (c) If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter."

12

[noting that a "final judgment terminates the litigation between the parties and leaves nothing in the nature of judicial action to be done other than questions of enforcement or compliance"]; *Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 357 [same].)

For all these reasons, we independently conclude plaintiff was not entitled to rely on any alleged "facts" from her RFA's that were never deemed admitted, particularly under the circumstances presented in the instant case, in order to obtain leave to amend her operative complaint for a fourth time in an attempt to state any valid cause of action.

B. *Primary Contentions*

1. Overview

Rather than discuss and review the sustaining of the demurrers by focusing on each defendant and/or on specific causes of action set forth in the TAC, plaintiff in her brief instead discusses various legal issues that presumably implicate or involve some or all of her 11 causes of action, in an attempt to show her TAC has in fact stated any valid cause of action to survive demurrer. At the end of that discussion, plaintiff in her brief then includes a section titled, "The elements of Quiet Title and all other causes of action have been properly pled," and in the entirety of that section states the following:

"All elements of Quiet Title and all other causes of action have been properly pled; incorporating the information contained in Motions to Deem RFA's admitted [citation], suffices to augment, supplement and/or complement any perceived deficiency. [Plaintiff] should be given an opportunity to amend the TAC, in order to incorporate the matters deemed admitted, should the Court determine that there are deficiencies in the pleading or TAC."

13

Plaintiff's decision to proceed in this manner is not only confusing, but in our view constitutes an abandonment of all claims raised in the complaint that are not clearly and concisely briefed on appeal. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984, fn. 1; see also *Spearman v. State Farm Fire & Casualty Co.* (1986) 185 Cal.App.3d 1105, 1113, fn. 4.) Indeed, as appellant, it was incumbent on plaintiff to explain in her briefing what facts (as opposed to legal conclusions) in her TAC supported any cause of action. (See *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334.) On this basis alone, we could deny plaintiff's appeal.

Nonetheless, we will address as best as possible the main points she raises in her brief, which in any event lead us to the same conclusion.

2. <u>Lack of Tender</u>

"It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security. [Citations.] This rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed. 'Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention.' " (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578–579.) "To hold otherwise would permit plaintiffs to state a cause of action without the necessary element of damage to themselves." (*Id.* at p. 580.) "Allowing plaintiffs to recoup the property without full tender would give them an

14

inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.)

Here, facts judicially noticed show plaintiff did not tender the amount owed when she filed this action. For this reason alone, we conclude the trial court properly sustained the defendants' demurrers without leave to amend. (See *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439 (*Nguyen*) [noting with respect to making payment a " 'trustor must pay the debt . . . according to its terms to protect the property from loss by foreclosure' "].)

Plaintiff, however, contends she was excused from tendering the full amount of the indebtedness because the foreclosure sale was void. (See, e.g., *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 290–291.) " 'As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly.' [Citations.] Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' " (*6 Angels, Inc. v. Stuart–Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284.) It is not sufficient to allege the legal conclusion that the sale was "void"; plaintiff instead has a duty to allege facts and coherent legal arguments showing how the sale was void. (Cf. *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358–1361 [concluding a foreclosure sale was void, not merely voidable, where no notice was given "to the trustor, the junior lienor, and the judgment creditor"].)

15

### 3. Exception to Tender

Plaintiff contends the foreclosure was invalid because the three assignments of the DOT by MERS and the substitution of trustee of CRC were void.[8] As summarized *ante*, the record shows MERS initially assigned the DOT in March 2007 to "US Bank, National Association" (US Bank). MERS in March 2012 next assigned the DOT to "US Bank National Association, as trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMCS, Asset Backed Pass-Through Certificates, Series 2006-WMC2" (US Bank, Trustee). In late September 2012, MERS for a third time assigned the DOT to correct the designation of the assignee as US Bank, Trustee, for the assignment recorded in March 2007, in which the assignee was then designated only as US Bank. Finally, between the second and third assignments of the DOT, the record shows US Bank, Trustee, by and through its attorney-in-fact Chase, substituted CRC as trustee of the DOT.

Plaintiff contends all three assignments of the DOT were void because they were "not issued by any authorized individuals or entities." She further contends the substitution of CRC was void because the individual signing the substitution on behalf of Chase, the attorney-in-fact of US Bank, Trustee, lacked such authority.

---

8      Not surprisingly, but tellingly, we note plaintiff in her TAC has *not* alleged any facts suggesting one or more of the defendant entities lacked the power or authority to record various documents *rescinding* the myriad notices of defaults and/or the notices of trustee's sales that were recorded on the subject property over the course of years. (See *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1188 [applying the axiom what is "[s]auce for the goose is sauce for the gander" when rejecting the contention it was fair to apply Civil Code section 1717 to allow a party to recover attorney fees if the party prevailed but deny the party's opponent attorney fees if the party lost].)

16

However, under California law "the relevant parties to such a transaction [are] the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. . . .' [Citation.] As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements . . . . [Citation.] [¶] Furthermore, even if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*), quoting *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 (*Herrera*); accord, *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, 1031, 1033.)

Moreover, the DOT plaintiff signed provides: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary . . . , MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." Contrary to plaintiff's characterization that the three assignments and the substitution of trustee were void, we conclude that right and power includes the authority to substitute a new trustee and assign the DOT prior to commencing foreclosure proceedings. (See *Gomes*, *supra*, 192 Cal.App.4th at p. 1157 [recognizing the homeowner, "[a]s stated in the deed of trust," "agreed by executing that document that MERS has the authority to

17

initiate a foreclosure"]; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 [noting the general rule that a "beneficiary may make a substitution of trustee . . . to conduct the foreclosure and sale"].)

Furthermore, such authority existed without regard to whether it was known to plaintiff. (See *Herrera*, *supra*, 205 Cal.App.4th at p. 1510 [noting that "[n]othing in the comprehensive statutory scheme governing nonjudicial foreclosures . . . contains a requirement that [an assignment of a deed of trust] must be acknowledged and recorded before the foreclosure sale"]; *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 336 [noting that "where a deed of trust is involved, the trustee may initiate foreclosure irrespective of whether an assignment of the beneficial interest is recorded"].) Plaintiff's conclusory allegations are insufficient to overcome the presumptions favoring the validity of MERS's authority, the conformity of its actions to that authority, and the statutory foreclosure scheme. (See *Fontenot*, *supra*, 198 Cal.App.4th at p. 267.)

Plaintiff relies on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1099 (*Glaski*) to support her contention the three assignments of the DOT and the substitution of trustee were void. In *Glaski*, the borrower's loan had been securitized by being placed into a trust formed under New York law, and the *Glaski* court concluded the borrower had standing to challenge an assignment of the note on the basis the defendants failed to assign it before the trust's closing date, creating a defect in the chain of title. (*Id.* at p. 1096.) Unlike the instant case, *Glaski* hinged specifically on New York law, which the court read as voiding the assignment. (See *ibid.*)

*Glaski* has been routinely criticized not only as being inconsistent with California's developing foreclosure jurisprudence, but also as incorrectly applying New York law.

18

(See, e.g., *Sandri v. Capital One, N.A.* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374–375 [explaining how *Glaski* unpersuasively departs from California jurisprudence]; *Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 [rejecting *Glaski* as inconsistent with other courts' interpretations of New York statute]; see also *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [borrower has no standing to challenge assignment of deed of trust]; *Jenkins, supra,* 216 Cal.App.4th 497 [same]; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272 [same].)[9]

We conclude *Glaski* is distinguishable, not only because it was based on New York law, but also because in the instant case there are no *factual* allegations, as opposed merely to legal conclusions, in plaintiff's TAC to support her contention that the three assignments of the DOT by MERS and the substitution of trustee were void for lack of authorization.

Further, with respect to the substitution of trustee, we note that a " 'person authorized to record the notice of default or the notice of sale' " includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee or an *agent* of that substituted trustee." (Civ. Code, § 2924b, subd. (b)(4), italics added; see also Civ. Code, § 2924, subd. (a)(1) [providing when a deed of trust expressly grants a power of sale to a trustee, a nonjudicial foreclosure may be initiated by the recording of a notice of default by a "trustee, mortgagee, or beneficiary, or any of their authorized *agents*" (italics added)].)

---

9    Whether a defaulting borrower has standing under *Glaski* is presently before our high court. (See *Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, S220012.)

Thus, CRC was at the very least acting as the agent of the prior named trustee when in late September 2012 it recorded a notice of default and election to sell under the DOT and when in late December 2012 it recorded a notice of trustee's sale. (See *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871 [noting that by statute "the Legislature has permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for the existing trustee," and noting that once such a document is recorded, " 'the new trustee shall succeed to all the powers, duties, authority, and title granted and delegated to the trustee named in the deed of trust' " and that "[o]ther than by recording a further substitution[,] there are no other statutory means by which the effect of a substitution, once recorded, may be avoided"].)

Plaintiff also contends that the California Homeowner Bill of Rights (HBR), which became effective on January 1, 2013, voids foreclosure. As relevant here, the HBR amended Civil Code section 2924 to provide that "[n]o entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest." (*Id.*, subd. (a)(6).)

Although the notice of default at issue here was recorded in late September 2012—before Civil Code section 2924 became effective, we need not decide whether that statute applies to a foreclosure in 2013. (See *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 [noting that "California courts comply with the legal principle that unless there is an 'express retroactivity provision, a statute will *not* be applied

20

retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application' "].)

Rather, we conclude US Bank, Trustee (through its attorney-in-fact) caused to be recorded a valid substitution of trustee substituting CRC as the trustee under the DOT. As the duly substituted trustee, CRC clearly was authorized to commence foreclosure by filing the notice of default.

Finally, we independently conclude the court properly granted without leave to amend the defendants' demurrers to the TAC for the separate and independent reason that plaintiff failed to allege any facts showing she was prejudiced as a result of any alleged lack of authority of the parties participating in the foreclosure process. The three assignments of the DOT by MERS—including correcting an error to ensure that the assignee would be designated in its capacity as trustee of a securitized trust—and the substitution of CRC as trustee did not change plaintiff's obligations under the loan or the fact she was in default. Absent any prejudice, plaintiff has no standing to complain about any alleged lack of authority or defective assignment. (See *Herrera, supra,* 205 Cal.App.4th at pp. 1507–1508; *Fontenot, supra,* 198 Cal.App.4th at p. 272.)

Because plaintiff's myriad causes of action are premised on allegations that are contrary to established law concerning MERS and the foreclosure process and because the TAC includes no *factual* allegations to support a defect in authorization, we disregard such allegations. (See *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734 [stating the general rule that although all material facts which were properly pleaded are admitted for purposes of ruling on a demurrer, " 'we will not assume the truth of contentions, deductions, or *conclusions of . . . law* [citation], and we may disregard any allegations that are *contrary to the law*' " (italics added)].)[10]

### DISPOSITION

The judgments are affirmed. With the exception of Onuldo, plaintiff shall pay all of defendants' costs of this appeal. (See Cal. Rules of Court, rule 8.278(a)(2).)

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

---

[10] Any new substantive arguments raised by plaintiff in her reply brief are deemed forfeited. (See *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [refusing to entertain argument raised for the first time in reply brief]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [noting arguments "raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"].)